CHICAGO—FIRST DISTRICT—JANUARY, 1912. 595

Casey v. Reedy Elev. Mfg. Co., 166 Ill. App. 595.

# John D. Casey, Administrator, Appellee, v. The J. W. Reedy Elevator Mfg. Company, Appellant.

## Gen. No. 15,939.

1. RES JUDICATA—*to what extent former judgment binding.* *Held,* that the judgment upon one appeal was not res judicata as to the entire cause but that such judgment was binding upon the Appellate Court to the extent of holding that the case was one which should properly be submitted to the jury, and one upon which a verdict might be found against the defendant.

2. MASTER AND SERVANT—*when doctrine of assumed risk does not apply.* "It is those risks alone, which cannot be obviated by the adoption of reasonable measures of precaution by the master, that the servant assumes."

3. EVIDENCE—*right of witness to explain answer given upon former trial.* A witness is entitled to explain why his answer to a particular question appeared to be different on the first trial from what it was on the second. *Held,* in this case, that the manner of explanation employed did not constitute reversible error.

4. EVIDENCE—*when rejection will not reverse.* A court of review will not reverse a judgment because of the exclusion of evidence unless it is made affirmatively to appear by the bill of exceptions what the proposed evidence was and that it was material and competent.

5. INSTRUCTIONS—*practice of giving excessive number.* The practice of giving an unnecessarily large number of instructions is vicious and should not be encouraged.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Cook county; the Hon. SAMUEL C. STOUGH, Judge, presiding. Heard in the Branch Appellate court at the October term, 1909. Affirmed. Opinion filed January 16, 1912. Rehearing denied January 30, 1912. *Certiorari* denied by Supreme Court (making opinion final).

**Statement by the Court.** This is an action on the case brought by the administrator of the estate of Carl J. Kokum against appellant, The J. W. Reedy Elevator Company, for having, as alleged, wrongfully caused the death of said Kokum. The first trial of the cause resulted in a judgment for $5,000 in favor of plaintiff, which judgment was, by this court, reversed (142

Ill. App. 126), because of the improper admission of certain evidence, and the cause was remanded. Upon the last trial, the plaintiff recovered a judgment for $10,000, and the defendant again appealed to this court.

It appears that on October 5, 1903, the Elevator Company was engaged in installing new elevator equipment in a seven story building (then known as the Mansure Building) at 74 Michigan avenue, in the city of Chicago. The height of the building had just been increased from five stories to seven, and the Elevator Company extended the elevator shaft from the fifth to the seventh floor, and installed a new electric appliance with which to operate the elevator. On the day in question, the strips or guides between which the elevator was to run above the fifth floor, having been previously put in place, and the necessary beams, pulleys, etc. at the seventh floor having also been put in and connected with the new elevator cables, the platform freight elevator, which had theretofore been operated by steam power, was run up to the fifth floor by means of the old machinery, and temporarily fastened there, and the old cables taken off. The men engaged in this work for the Elevator Company had come up on the elevator, bringing with them the ropes, block tackle, etc., which was afterwards used in the attempt to hoist the elevator from the fifth to the seventh floor, where it was to be connected with the new cables. One Fred W. Johnson, alleged by the plaintiff to have been the foreman in charge of the work, went up to the seventh floor with one Moork, a helper, where they tied to the overhead beam on this floor a 1 inch rope, to which was attached the upper hook of a chain and tackle. Plaintiff's intestate, Kokum, went upon the top of the elevator, which was then at the fifth floor, and tied a 1½ inch rope around the cross-beam above the car to which the lifting device was to be attached, wrapping the rope twice around the beam; the lower

hook of the chain and tackle referred to, was then hooked into the loop of this 1½ inch rope. Johnson and Moork, who were working at the elevator shaft above, then started to raise the elevator by means of the rope and tackle, while Kokum remained standing upon it. After the elevator was raised about three feet, it stopped, either because there was some solid obstruction in its way, or because for some reason it bound between the guide strips between which it was running. When they attempted to raise the car farther, the rope broke at the point where it was wrapped around the elevator beam, and the car fell five stories with Kokum on top of it, he receiving such injuries as to result in his immediate death.

In brief, appellant was charged with negligence in two particulars; first,—it was claimed that Johnson, as foreman, had knowledge that one of the lag screws, which was to hold in place one of the guide strips, between which the elevator car was to be operated above the fifth floor, had, the day before, been left protruding to the extent of about one-quarter of an inch from the surface of the strip, so that when the iron shoe on the end of the elevator cross-beam reached this lag screw, it was unable to pass—the car could go no farther; that the deceased had no knowledge that the lag screw was thus protruding, and that when Johnson and one Moork, a helper, made greater efforts to raise the elevator past this obstruction, by means of additional pulling upon the strong chain and tackle, the increased strain caused the rope to break at the point where it was wrapped about the elevator cross-beam, and the car was precipitated to the bottom of the shaft, with Kokum upon it, by means of which he lost his life. Second,—it is also claimed as negligence against appellant, that while the elevator, in its upward course, after having been lifted about three feet, appeared to be stuck between the guide strips, from whatever cause, the foreman, Johnson, ordered it to be pulled farther

598        APPELLATE COURTS OF ILLINOIS.

Casey v. Reedy Elev. Mfg. Co., 166 Ill. App. 595.

up, without ascertaining the cause of such sticking, and that, in the effort to thus pull it up, notwithstanding the sticking, the rope, wrapped around the crossbeam, was broken, and the car fell.

Appellant contends that plaintiff cannot recover in this case because of the contributory negligence of his intestate; first,—in that he was unnecessarily standing upon the elevator car while it was being raised, and without being directed to do so; second,—because he had directly contributed to the accident by failing to properly fasten the rope around the beam of the car, in that he failed to put any waste or packing between the rope and the sharp edges of the metal beam; and also in not discovering and reporting the projecting lag screw, if any there was, when the elevator began to stick. Appellant also urges that the court below should have instructed the jury, at the close of plaintiff's evidence, and at the close of all the evidence, to find for the defendant; and that the court erred in admitting and rejecting evidence, and in refusing to give instructions submitted by it, and in overruling the appellant's motion for a new trial.

EASTMAN, EASTMAN & WHITE, for appellant.

EDWARD J. GREEN and CHARLES C. SPENCER, for appellee.

MR. PRESIDING JUSTICE BALDWIN delivered the opinion of the court.

At the outset, we are asked to pass upon the effect of the judgment of this court when this case was previously here, and when it was reversed and remanded. (142 Ill. App. 126.) We cannot go to the length urged by the appellee and hold that such decision constitutes *res judicata* as to the entire case. That decision is now binding upon us to the extent of holding that the case was one which should proper-

ly be submitted to the jury, and one upon which a verdict might be found against the defendant; therefore, we do not regard these questions as open for our consideration, upon this appeal. See Turck, Adm'r v. Chicago, R. I. & P. Ry. Co., 152 Ill. App. 488.

"The decision and judgment that the case be remanded was necessarily an adjudication by this court that it did not appear from the evidence, either that the defendant was not guilty of the negligence alleged in the declaration, or that the plaintiff was guilty of contributory negligence, and that on the evidence in the record a jury might properly find the defendant guilty. The evidence on the second trial is the same as on the first, the parties and the issues are the same. Whether from the evidence the jury might properly find the defendant guilty was a question of law, decided by this court on the former appeal, and the decision on that appeal, that from the evidence the jury might properly find the defendant guilty, is the law of the case on this appeal."

It is quite clear that in this case, appellee relies for a recovery upon showing to the satisfaction of the jury, that Johnson was a foreman over deceased, and in charge of the work; and that on the day previous to the accident, while the elevator shaft, from the fifth to the seventh floor, was being prepared for use, one of the lag screws, with which one of the guide strips was fastened, was left projecting beyond the surface of the guide strip about one-quarter of an inch, and that, with knowledge of that fact on the part of Johnson, but without knowledge on the part of the deceased, the elevator was raised from the fifth floor about three feet, until it struck this lag screw, and that in applying stronger pressure to continue to elevate it, the rope around the elevator crossbeam was caused to break and the elevator to fall; or, that while the elevator, after having been lifted about three feet was stuck fast in the shaft, whether be-

600        APPELLATE COURTS OF ILLINOIS.

Casey v. Reedy Elev. Mfg. Co., 166 Ill. App. 595.

cause of the contact with the lag screw, or for some other reason, Johnson, the foreman, negligently, and without ascertaining the cause of the obstruction, ordered it to be hoisted, in the attempt to do which, additional power was applied,—the rope broke and the elevator fell.

We have examined, with care, the abstracts and briefs filed in this case, and have verified them in many particulars from the original record. We think the testimony sufficient to warrant the jury in finding that Johnson was a foreman over deceased, and was actually in charge of the work for the Company. As to whether the lag screw had been left projecting beyond the face of one of the guide strips in the elevator shaft, and if it had, whether Johnson knew, or should have known, that; or whether the car was stuck between these guide strips from some other cause, so that it was negligence on the part of Johnson, in either case, to cause the application of further power to continue raising the elevator, without ascertaining the cause of the obstruction; and whether these conditius caused the breaking of the rope, which the deceased had wrapped about the metal cross-beam above the elevator car, and whether such breaking was due to the large additional strain thus put upon it, or was due to the inherent weakness in the rope caused by being tied directly about this metal beam without waste or packing between the metal and the rope,—these are questions upon which the evidence is in direct conflict and hopelessly irreconcilable. That Johnson was the foreman, and had charge of the work, was testified to by three witnesses and admitted by Johnson himself; that the lag screw had been left projecting in the elevator shaft is testified to directly by one Moork, who claims that he himself was working at that part of the job with Johnson on the day before the accident, and that he himself left the lag screw projecting because of his inability to screw it

Casey v. Reedy Elev. Mfg. Co., 166 Ill. App. 595.

clear in with the wrench he then had, and that, with Johnson's knowledge, and by Johnson's directions, it was left in this condition until the time of the accident. There is also direct evidence to the effect that Moork and Johnson, who were located at the elevator shaft opening on the seventh floor, at the time of the accident, had started to hoist the elevator by means of the chain and tackle, and after it had been hoisted about three feet, the further upward passage appeared to be obstructed, and the car stuck, and that by Johnson's directions, deceased was handed a wrench, and endeavored to loosen the grip, but failed to find the real obstruction, whereupon Johnson gave the order to go ahead and continue hoisting the elevator; that, thereupon, they hoisted three or four times upon the powerful chain and tackle, when the rope around the cross-beam of the elevator parted and the car went down, taking Kokum with it; and Moork further testified that the top of the car, at the time of the accident, was right at the place where the lag screw had been left by him and Johnson the day before. In many particulars, his testimony is corroborated by one Grady.

Appellant's counsel strongly insists that the car had not reached the point where the lag screw was said to be projecting. We have carefully gone over the drawings in the record and the measurements, and the elaborate arguments of counsel in relation to this phase of the controversy, and we are unable to reach the conclusion that the contact between the shoe on the elevator beam and the lag screw was impossible. In any event, it is fairly clear that after this car had been raised several feet, it did stick from some cause, and that there was certainly additional power applied upon this chain and tackle to attempt to lift the elevator car farther.

While it is true that Johnson denies there was any projecting lag screw, in the light of the testimony of

Moork, it was clearly a question for the jury to determine, and we cannot say that the jury were clearly wrong in the conclusion they must have reached.

Perhaps the most difficult question in the case is whether appellee's intestate was guilty of contributory negligence, proximately inducing the injury, in wrapping the rope around the metal beam of the car without protection from its sharp edges. Appellant vigorously insists that it was the duty of deceased to have placed waste or packing of some sort between the rope and the edges of the metal, and that his failure to do so, directly caused the rope to part and the elevator to fall. However, the jury had before it, on behalf of the appellee, testimony tending to show that the tensile strength of the rope, tied around this piece of iron in the manner it was shown to be, without protection between the rope and the metal, was such that it would carry from 3000 to 3500 pounds; while the elevator, with Kokum standing upon it, weighed not exceeding 1600 pounds. It is also apparent from the conceded facts in the case that the rope, wrapped about the beam as it was, had, in fact, sustained the load of the elevator, with Kokum standing upon it, while the elevator was being lifted for several feet, and it was not until for some reason the further upward passage of the car was obstructed, and additional power, through the means of the strong chain and tackle, was applied, that the rope broke.

Appellant also claims that the deceased was guilty of contributory negligence, directly contributing to the injury, in that he was standing on the top of the elevator. There was evidence before the jury, from which it might well have concluded that he was there in the discharge of his duties, preparing to receive and attach the new elevator cables whenever the elevator should be sufficiently raised to permit it. At least one witness testified that the deceased was standing on the car, taking in the slack of the rope on which he was

pulling, and which was attached to the beam at the top of the car, as it was coming up. Another testified that at the moment the car fell, Kokum had the rope tackle fast to the new cable, and one end of it fastened to the car, and had it turned around the timber to take up the slack of the cable and hitch on the car when it came near enough. Johnson, himself, testified that the deceased stayed on the elevator, taking in slack, and it appears, from Johnson's testimony, that Johnson was, with Moork, a helper, on a scaffold on the sixth floor, working the chain block, raising the elevator. It appeared also from the testimony that there was no obstruction to prevent Johnson seeing, through the few feet between him and the top of the elevator, and knowing just how the rope was tied around the metal cross-beam. There was also testimony to the effect that just before the accident, Johnson gave orders to deceased to "slack the shoe off." As this could be done only by some one on the car, the jury would be justified in finding from this evidence, if credited, that the deceased was properly in that position, and that his foreman recognized it by giving him orders to do work which could best be done from that point. It is true that one witness, Swanson, testified for appellant that he told Kokum he should not ride upon the top of the car, but one witness for appellee, Grady, who claimed to have been standing within two or three feet, with no obstruction between him and Swanson, denies any such conversation. All these questions were properly submitted to the jury, and their verdict thereon must stand, unless we find that the verdict is clearly against the manifest weight of the evidence. This we do not, and cannot so find.

It is strenuously argued that Kokum should have placed some material, waste or packing, under the rope to protect it from the sharp edges of the metal beam; but it does not appear that the employer provided or furnished him any material for this purpose.

604     Appellate Courts of Illinois.

Casey v. Reedy Elev. Mfg. Co., 166 Ill. App. 595.

It does appear that there was some waste in the basement, used by the machinists, and it further appears that there was some burlap in the building which belonged to the tenants, but the basement was several stories below the place of the accident, and the burlap belonged to the owners or tenants of the building, but not to appellant. There was also evidence before the jury that Kokum's relation to the work was merely that of a "helper," and his duties were such as that term indicates. The superintendent of appellant testified that "Kokum was a helper to wait on and help the mechanics, go errands, bring tools, do heavy work of lifting and carry things. He was not a mechanic," and the same witness testified that it was not within Kokum's province to know about the conditions under which the rope would break or cut.

We do not think that the doctrine of assumed risk urged here by appellant applies to this case. Our Supreme Court has said, "It is these risks alone, which cannot be obviated by the adoption of reasonable measures of precaution by the master, that the servant assumes." Western Stone Co. v. Musical, 196 Ill. 382. Nor do we think the court erred in refusing to sustain appellant's motion in arrest of judgment. It is well settled that a motion in arrest of judgment will not be sustained because of a defective count if there are others that are sufficient; and the other ground upon which it is urged before us, that the motion should have been sustained, we do not consider tenable.

Appellant complains of the action of the court in improperly admitting evidence. Upon the trial of the cause, a witness, Moork, testified that at the time the elevator stuck in the shaft, Johnson, the foreman, said, "Go ahead and hoist it up. Hoist on the cable." Moork further testified concerning the same time, "We got our orders from Johnson to go ahead. Yes, I got orders from Johnson. * * * Yes, Johnson told

me to pull away.'' For the purpose of showing that Moork had given contradictory testimony at the previous trial of the cause, appellant's counsel asked Moork, ''Were you not asked this question? 'Who was it that you heard say hoist away?' and did you not answer by *simply* saying, 'Mr. Johnson was below'?'' Upon re-direct examination, counsel for appellee, referring to the question just above quoted, put this question: ''Immediately following the question Mr. Eastman asked you a while ago, didn't I ask you this question, 'Can't you answer, or can you answer, the question directly, who was it you heard say ''hoist,'' and didn't Judge Gibbons then interrupt me by saying, 'He has already stated Mr. Johnson gave him the order?' '' To this question the witness answered, ''Yes, sir.'' The witness was entitled to explain why his answer to the question appeared to be different on the first trial from what it was on the second; and, while we think the explanation should have been made in some other manner, we are unable to say that the court committed reversible error in allowing counsel to put the question the way he did.

Appellant complains of the action of the court in rejecting certain testimony offered by it; but, upon examination, we do not find the record to show, by offers of proof or otherwise, what counsel expected to show by answers to the questions objected to; and the law is well settled that a court of review will not reverse a judgment because of the exclusion of evidence, unless it is made to affirmatively appear by the bill of exceptions what the proposed evidence was and that it was material and competent. See Ittner Brick Co. v. Ashby, 198 Ill. 562.

Appellant complains of the action of the court in refusing to give certain instructions offered by it, and giving two instructions requested by appellee. We have carefully gone over the matter of instructions, both those given and refused, and we find that in addi-

tion to the peremptory instructions, and instructions relating to individual counts, comprising thirteen in number, requested by appellant, the court was requested by appellant to give forty-seven additional instructions, of which number, the court actually gave twenty-six. This court has heretofore criticised an apparent tendency, especially on the part of the defense in personal injury cases, to submit to the trial court an unnecessarily large number of instructions, sometimes amounting to a series of after-trial pleadings,—tending to confuse the court, and, if given, to mislead the jury, and not calculated to aid in reaching a just decision of the matters involved.

In this case no good reason appears why so large a number of instructions, some of which were quite lengthy, was necessary; and, after careful consideration of all the instructions, including those given and those refused, we think the court below did not commit reversible error in relation thereto, and that the jury was, on the whole, fairly instructed as to the law applicable to this case.

Finding no reversible error, the judgment of the court below will be affirmed.

*Judgment affirmed.*