Hanrahan v. F. Salter & Co., 182 Ill. App. 161.

---

## John J. Hanrahan, Appellee, v. F. Salter & Company, Appellant.

## Gen. No. 18,363.

1. LANDLORD AND TENANT, § 250*—*who liable as landlord for injuries resulting from defective condition of premises.* One who accepts an assignment of a lease from the original lessee and executes a lease demising the premises for a term expiring when the original lease expires, *held* to be a landlord and liable as such for injuries resulting to a pedestrian by the falling of a defective wooden awning suspended over the sidewalk in front of the premises.

2. LANDLORD AND TENANT, § 426*—*relation between lessee and his grantee of residue of term.* Whether, as between a party who has received an assignment of a lease and his lessee for the residue of the term, the former is a landlord or a mere assignor of a lease depends upon the intention of the parties.

3. DAMAGES, § 110*—*when not excessive, for personal injuries.* Verdict for three thousand dollars for injuries which caused pain in chest and neck for three years and permanent injuries, such as a "kink" or prominence in the back, crookedness of right arm and loss of freedom of motion of right elbow, *held* not excessive.

4. APPEAL AND ERROR, § 1735*—*when decision on former appeal not res adjudicata.* Decision of Appellate Court on a prior appeal remanding cause on the ground that declaration did not state a

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.
Vol. CLXXXII 11

good cause of action against one defendant, *held* not *res adjudicata* on question of liability of the other defendant, such question not having been considered and the parties and the evidence being different.

Appeal from the Superior Court of Cook county; the Hon. ALBERT C. BARNES, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1912. Affirmed. Opinion filed October 9, 1913.

ARNOTT STUBBLEFIELD, for appellant.

JOHN C. KING and JAMES D. POWER, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

This action was originally commenced by appellee, plaintiff below, in May, 1904, against F. Salter & Company, a corporation, hereinafter called Salter & Co., appellant, and the City of Chicago, Frank Salter and Dave Heyman, as defendants, to recover damages for personal injuries, occasioned by the falling upon plaintiff of a defective and dilapidated wooden awning suspended over the sidewalk from a building at No. 6700 Stony Island avenue (also known as Jackson Park avenue), which avenue was a public highway in the city of Chicago. Plaintiff alleged in the additional count of his declaration, *inter alia*, that prior to the day of the accident Salter & Co. was the owner of the building, to which was attached an awning, which extended over and above the sidewalk and under which pedestrians were accustomed to pass; that long prior to said day, and prior to and at the time of the leasing or letting of the building thereinafter referred to, Salter & Co. "wrongfully and negligently permitted" the awning to be and remain in such defective and insecure construction, and in such an old, rotten, weak and dilapidated condition, that it was liable to fall down upon pedestrians, and which said condition "amounted to

a nuisance," all of which facts were known or could have been known by Salter & Co. by the exercise of ordinary care; that prior to the day of the accident and while the awning was in said condition, Salter & Co. "negligently leased" the building, including the awning, to Heyman and Heironimus, to be used as a saloon, and they took possession of the same and remained in possession from thence to and including the time of the injury complained of; and that while plaintiff was walking along and upon said sidewalk and under said awning, and while exercising ordinary care for his own safety, said awning, as a direct result and in consequence of said defective condition, broke, collapsed and fell upon plaintiff, and severely and permanently injured him.    To plaintiff's declaration Salter & Co. pleaded the general issue and special pleas to the effect that at the time of the injuries complained of it was not in possession or control of the said building.

There have been three jury trials of this case. During the first trial, in July, 1907, the plaintiff discontinued the action as to the defendants Frank Salter and Dave Heyman, and subsequently the jury returned a verdict finding Salter & Co. and the City of Chicago guilty and assessing plaintiff's damages at five thousand dollars.    Plaintiff remitted one thousand five hundred dollars and judgment for three thousand five hundred dollars was entered against both defendants. Both appealed to this court, and in December, 1908, this court reversed the judgment and remanded the cause, on the grounds, as stated in the opinion (145 Ill. App. 38), that the declaration did not state a cause of action against the City of Chicago, and that the trial court erred in refusing to permit plaintiff to answer certain questions asked of him on cross-examination.    The transcript of the record now before us discloses that on the second trial, in October, 1911, the jury returned a verdict finding Salter & Co. guilty and assessing

plaintiff's damages at one thousand dollars; that Salter & Co. moved for a new trial, and plaintiff also moved for a new trial as to the City of Chicago, and that both motions were sustained and a new trial awarded. On the third trial, at the conclusion of plaintiff's case and on motion of the City of Chicago, the court instructed the jury to find the City not guilty, and the jury thereupon returned a verdict accordingly and a judgment in favor of the City for costs was subsequently entered. At the conclusion of plaintiff's case, also, and again at the conclusion of all the evidence, Salter & Co. moved for a directed verdict in its favor, but the motions were severally denied and exceptions taken. The jury returned a verdict finding Salter & Co. guilty and assessing plaintiff's damages at three thousand dollars, and on December 23, 1911, the court entered judgment on the verdict, which judgment appellant, Salter & Co., seeks by this appeal to reverse.

The two principal contentions urged by counsel for Salter & Co. are (1) that Salter & Co. did not, at the time of the accident, or at any time, have any ownership, possession or control of the building or premises in question, and did not *in law* execute a lease of the premises with a nuisance thereon to Heironimus & Heyman, and, hence, is not liable for the injuries sustained by plaintiff, and (2) that the damages awarded by the jury are excessive.

As to the first contention, counsel for plaintiff argue at the outset that, inasmuch as this court on appeal reversed the judgment entered on the first trial and *remanded* the cause on the ground that the declaration did not state a good cause of action against the City of Chicago, that decision is conclusive of the question that the case was properly submitted to the jury and that the jury might properly find for the plaintiff as against Salter & Co., and that the question of the liability of Salter & Co., as a matter of law, is

no longer open, but is *res adjudicata*. Counsel for plaintiff, in support of their position, cite the case of *Turck v. Chicago, R. I. & P. Ry. Co.*, 152 Ill. App. 488. In that case it appeared that, on a former appeal taken by the defendant from a judgment against it on the first trial, the Appellate Court had held that the trial court erred in giving a certain instruction for the plaintiff, and for that error that judgment was reversed and the cause remanded. When the case was tried the second time, by stipulation all of the evidence on the first trial was read, and no additional evidence was offered by either party, and plaintiff again obtained a verdict and judgment, and defendant again appealed. On the second appeal the Appellate Court *held* in effect that the question, whether on the *same evidence* the jury might properly find the defendant guilty, had been determined in favor of the plaintiff by the court on the former appeal *remanding* the cause. In the present case the evidence heard on the third trial is not the same as that presented on the first trial and which was before this court on the former appeal, and the parties now before this court are not the same. Furthermore, this court in its decision on the former appeal made no reference to the particular questions then presented for its decision on behalf of Salter & Co., and seemingly did not consider them. And we are of the opinion that both of the points urged by counsel for Salter & Co. are now properly before us for consideration and decision. *Casey v. Reedy Elevator Mfg. Co.*, 166 Ill. App. 595, 598; *Jackson v. Glos*, 249 Ill. 388, 392. In the *Jackson* case, *supra*, it is said: "If an appellant or plaintiff in error, by his assignment of errors and brief and argument, presents questions which are not considered or decided by the court and the judgment is reversed on other grounds, he will, of course, not be concluded as to them on the second appeal."

It is admitted by counsel for Salter & Co. in his

printed brief and argument that plaintiff on the last trial introduced evidence to show that the wooden awning projected out over the sidewalk from the building for about ten feet and was about ten feet above the sidewalk; that it had been built about five or six years before the accident and had become "rotten and decayed;" that this condition existed on and prior to August 20, 1903 (the date of the written lease of the building from Salter & Co. to Heironimus and Heyman, hereinafter mentioned); that on December 12, 1903, plaintiff, while walking on Stony Island avenue under the awning, was knocked down by the falling upon him of the awning; that when the awning was removed from him by persons who came to his assistance it "fell to pieces," and that the boards of the awning "were rotted;" and that plaintiff was severely injured. Plaintiff testified that as a result of the accident he was in the hospital about two weeks and while there suffered great pain; that he had to remain at home for about six months, during which time he could neither lie in bed for any long period of time nor walk for more than ten minutes at a time; that the pain in his chest and neck continued for about three years; that his neck is still stiff and that he still has a "kink" or prominence in his back; that he has been unable to stand up straight since the accident; that his right arm is crooked with less freedom of motion and about two inches shorter than before the accident; that at the time of the trial he was receiving three dollars per day as wages, which is nearly as much as he was receiving at the time of the accident. Two physicians testified as to the kink or prominence in plaintiff's back and that the condition was permanent, and one of these physicians and another physician testified as to the limitation of motion in plaintiff's right elbow and that the condition was permanent. The evidence introduced by Salter & Co. was confined, principally, to the endeavor to show that it did not own, possess

or control the building on the day of the accident or at any time prior thereto.

On this point the facts disclosed by the evidence are as follows: The ground upon which the building stood was owned by the Bass estate, and the premises were in the possession of E. K. Hand, a saloonkeeper, as lessee, from 1894 to August 20, 1903. The last lease which Hand received was dated May 1, 1903, was signed by "R. P. Bass, executor, by John F. Bass," and by Hand, and by it the lessor demised and leased a "space of ground," described by metes and bounds, with the appurtenances, to Hand, as lessee, for a term of two years, expiring April 30, 1905, at a monthly rental of fifty dollars. Hand testified that E. A. Hartman erected the building on the land; that he (Hand) acquired the building about two years after Hartman built it and had been in possession thereof from 1894 down to August, 1903. The lease above mentioned was introduced in evidence and below the signatures the following undated endorsement appeared: "In consideration of one dollar and other valuable considerations, I hereby assign all my right, title and interest in the within lease to F. Salter & Co., a corporation. (Signed) E. K. Hand." On August 20, 1903, Hand sold the stock of goods which he had in the saloon to the firm of Heironimus & Heyman, with the understanding of the latter that they would get a lease of the premises, and on said day Hand surrendered possession of the same to said firm, and they continued in possession until December 1, 1903, when Heyman alone obtained possession, which he still retained at the time of the third trial. There was also introduced in evidence, as "Plaintiff's Exhibit 1," a written lease of said building, together with all bar fixtures, tables, chairs and all restaurant fixtures, to A. G. Heironimus and D. A. Heyman, dated August 25, 1903, for the period from August 20, 1903, to April 30, 1905, "subject however to the conditions embodied in the ground lease."

This lease was signed "F. Salter & Co., F. Salter, Pres.," and bore the imprint of the corporate seal of Salter & Co., and provided that there should be paid to Salter & Co., "as rent for the said demised premises," the sum of one hundred and fifty dollars per month for the months of May, June, July, August, September and October, and the sum of seventy-five dollars per month for the other months in the calendar year. The lessees covenanted that at the expiration of the term they would "yield up the said demised premises" to Salter & Co., and that if they should remain in possession thereof for ten days after notice of default, or after termination of "this lease," they should be deemed guilty of "forcible detainer," under the statute. There was also introduced in evidence, as "Defendant's Exhibit 1," what apparently is a duplicate of the above lease, and which was signed "Heironimus and Heyman, D. A. Heyman." The rent mentioned in "Plaintiff's Exhibit 1" was paid during the entire term to Salter & Co., and Heyman, plaintiff's witness, testified that he never had any other lease for the premises than that one, prior to December 12, 1903. Frank Salter, president of Salter & Co., testified on the first trial, and his testimony was read on the third trial by agreement, that he personally signed that lease, on behalf of Salter & Co., on *August 20th*; that "Mr. Hand came into my store and handed me this lease, and talked over the consideration, and I accepted the transfer of the ground lease at the same time," and that the indorsement was made on the ground lease at the same time, August 20th. Heyman further testified that on the day of the sale by Hand of the saloon stock of goods to his (Heyman's) firm, August 20th, and *before* his firm was let into possession, Hand told him that he (Hand) owed Salter & Co. a certain amount of money, and that he (Hand) was going to turn over the building to Salter & Co., so that Salter & Co. could get the amount of the

debt that he owed Salter & Co. out of the additional rent which Heyman's firm would pay, over and above the amount of rent reserved in the ground lease, that Heyman's firm would get a lease from Salter & Co., and not from Hand, whereby they would be allowed to remain in possession until the end of the term mentioned in the ground lease, namely, April 30, 1905, and that Heyman's firm would pay rent to Salter & Co. and not to him (Hand); that W. S. Baker, vice-president of Salter & Co., was present at this conversation, and that Baker told Heyman at that time that Salter & Co. would make the lease to Heyman's firm; that Hand did not at any time tell him (Heyman) that Hand would give Heyman's firm a lease of the premises, and that Hand never made such a lease; and that Heyman's firm never at any time agreed to pay any rent to Hand and never conducted any negotiations for a lease with anyone except Salter & Co. Fred Oesterle, Hand's bartender, testified that, "a couple of days" before August 20th, Hand told Heyman, in Baker's presence, that Heyman "would have to do business with Salter & Co. Naturally pay the rent to Salter & Co." The testimony of Hand and Baker, witnesses called on behalf of Salter & Co., is quite conflicting with the testimony of plaintiff's witnesses as above set forth. Hand, while admitting that he never *signed* a lease to the firm of Heironimus & Heyman, testified that when he sold his stock to them "nothing was said about Salter & Co. giving them a lease;" that he (Hand) said that the firm could have the premises until the expiration of the ground lease, and that he (Hand) would give them a lease; that it was subsequent to the time when he surrendered possession to said firm that he first said anything to them about their getting a lease of the premises from Salter & Co., and that he made that arrangement with Salter & Co. *after* he had sold out and delivered possession to said firm. Baker testified that on August 20th he

was in the building and assisted Hand, and said firm, in making an inventory of Hand's stock of goods; that on that day he did not, nor did he hear Hand, tell either of the members of said firm that they could get a lease from Salter & Co.; that on the *next* day he asked Hand if the latter could do something to secure his debt to Salter & Co., and that Hand replied that he would arrange to do it out of the rent "as soon as he got the leases signed up;" and that prior to the time Hand sold out the saloon Salter & Co. had no interest therein, or in the premises, other than that of a creditor of Hand. Both Hand and Baker testified that it was not until *August 25th* that the ground lease was assigned by Hand to Salter & Co. and the lease, in duplicate, from Salter & Co. to Heironimus & Heyman executed.

It is contended by counsel for plaintiff that when on August 20, 1903, Salter & Co. accepted an assignment of the ground lease from Hand and made a written lease of the building to Heironimus & Heyman, Salter & Co. acquired the ownership of said building, subject to the conditions of the ground lease, and the relation of landlord and tenant was established between Salter & Co. and Heironimus and Heyman. And counsel for plaintiff further contend that Salter & Co. is liable, as such owner or landlord, for the injuries to plaintiff, for the reason that it is the settled law of this State that the owner or landlord of leased premises is liable for injuries inflicted by reason of neglect or failure to keep the premises in repair, if the dangerous or defective condition by which the injury was occasioned existed when the premises were leased, or if that which occasioned the injury was a nuisance and was upon the premises when the lease was executed. Citing *West Chicago Masonic Ass'n v. Cohn,* 192 Ill. 210, 218; *City of Peoria v. Simpson,* 110 Ill. 294; *Gridley v. City of Bloomington,* 68 Ill. 47, 51; *Everett v. Foley,* 132 Ill. App. 438, 443. Counsel for Salter & Co.

concedes that this statement of the law is substantially correct, but contends that the rule does not apply, for the reason that, under a proper construction of the facts as shown in this record, Salter & Co. did not own, possess or control the premises, never was in actual possession thereof, never assumed any control thereof, and did not *in law* execute any lease of the premises, but only an *assignment,* and as a legal consequence was not a landlord in contemplation of law, and, hence, is not liable. Counsel argues that while the instrument was in the form of a *lease,* executed by Salter & Co. and dated August 25, 1903, by which was demised the building, etc., for the period ending April 30, 1905, the same day the ground lease expired, it was in legal effect an *assignment,* because Salter & Co. having demised the building to the end of the term of the ground lease, had no reversionary right or interest therein, and the true relationship between the parties to the instrument was not that of landlord and tenant, but that of assignor and assignee, and that if Salter & Co. was an *assignor* rather than a *lessor* or landlord it is not legally liable. Counsel cites in support of his contention, among others, the cases of *Sexton v. Chicago Storage Co.,* 129 Ill. 318, 326, and *Taylor v. Marshall,* 255 Ill. 545, 547.

When Salter & Co. accepted the assignment to it of the ground lease from Hand it stepped into the shoes, so to speak, of Hand, as original lessee, and as such lessee it executed the lease, or instrument, dated August 25, 1903, demising the building, etc., to Heironimus and Heyman, for a term expiring when the original lease expired, but at a considerably increased rental. In the *Sexton* case, *supra,* it is said (italics ours):

"The general principle, as held by all the authorities, is, that where the lessee *assigns* his whole estate, without reserving to himself a reversion therein, a privity of estate is at once created between his assignee and the original lessor, and the latter then has

a right of action directly against the assignee on the
covenants running with the land, one of which is that
to pay rent; but if the lessee *sub-lets* the premises,
reserving or retaining any reversion, however small,
the privity of estate between the sub-lessee and the
original landlord is not established, and the latter has
no right of action against the former, there being
neither privity of contract nor privity of estate be-
tween them. The chief difficulty has been in deter-
mining what constitutes such reservation of a rever-
sion. * * * Where all of the lessee's estate is trans-
ferred, the instrument will operate as an assignment,
notwithstanding that words of demise instead of as-
signment are used, and notwithstanding the reserva-
tion of a rent to the grantor, and a right of re-entry
on the non-payment of rent or the non-performance
of the other covenants contained in it. * * * *Un-
doubtedly many cases may be found* wherein the lessee
has granted to another party his *entire* term, retaining
no reversionary interest in himself, and it has been
held the relation *as between the parties* was that of
*landlord and tenant,* * * * because such was *clearly
the intention of the parties;* but this was the result of
contract, only, and not conclusive *upon the original
landlord,* since he was not a party to it.''

In *Stewart v. Long Island R. Co.,* 102 N. Y. 601,
607, it is said (italics ours):

''Where a lessee of land leases the same land to a
third party, the question has often arisen whether
the second lease is in legal effect an assignment of the
original lease, or a mere sub-lease. The question has
frequently, and probably most generally, arisen be-
tween the *lessee* and *his transferee,* and much confu-
sion will be avoided by observing the distinction be-
tween these cases, and cases where the question has
been between the *transferee* and the *original landlord.*
* * * As between the *original lessee* and *his lessee* or
transferee, *even though the original lessee demises his
whole term,* if the parties *intend* a lease, the relation
of *landlord and tenant,* as to *all* but strict reversionary

rights, will arise between them. The effect, therefore, of a demise by a lessee for a period equal to or exceeding his whole term is to divest him of any reversionary right and render his lessee liable, as assignee, to the original lessor, *but at the same time the relation of landlord and tenant is created between the parties to the second demise, if they so intended.*"

This last sentence in the opinion of the *Stewart* case is quoted by our Supreme Court in its opinion in the *Sexton* case. In *Craig v. Summers,* 47 Minn. 189, 192, it is said: "It is also well settled that the same instrument may in law create an assignment of the term, as between the original lessor and the assignee, and also the relation of landlord and tenant between the parties to the second demise."

In 18 Am. & Eng. Ency. Law (2d Ed.) p. 658, it is said: "While one receiving from a lessee the interest in his whole term incurs the liability of an assignee to the original lessor, the transaction may create, *if so intended,* the relation of landlord and tenant between the lessee and the sub-lessee, on the principle of a reversion by estoppel, so as to confer on the original lessee, as against the sub-lessee, the rights and remedies of a landlord."

It would seem from the above citations of authority that, in the present case, the question whether Salter & Co., at the time it executed the instrument dated August 25, 1903, to Heironimus & Heyman, became, as between the parties to that instrument, a landlord or a mere assignor of a lease, depends upon the *intention* of the parties. What was that intention, as disclosed from the evidence? The instrument provided that the rent reserved therein, which was considerably larger than the rent reserved in the ground lease, should be paid to Salter & Co. And the testimony shows that the reason for this was that Hand owed a debt to Salter & Co., and the difference between the amount of the rent reserved in the instrument and that reserved in the ground lease was to go to Salter & Co.

in liquidation of that debt. Furthermore, it was provided in the instrument that possession of the building should be surrendered to Salter & Co. at the expiration of the term mentioned in the instrument, and that Salter & Co. should have the right of re-entry as against Heironimus & Heyman for conditions broken, and that a holding over should be considered as a forcible detainer. We are of the opinion that it was clearly the intention of the parties to that instrument, at the time of its execution, that Salter & Co. should be considered as a landlord, with the rights and remedies of a landlord (*Dunlap v. Bullard*, 131 Mass. 161, 162), and this intention was further made manifest by the payment to Salter & Co., each month during the term mentioned, of the rent reserved. And Salter & Co. had an especial reason for acting as a landlord. By so doing it expected to have, during the term, an old debt owing to it paid. If Salter & Co. wanted to become a landlord, and got the rights and privileges thereof, we think Salter & Co. should be held to have assumed the duties and liabilities thereof under the law. And we are of the opinion that the evidence shows that the dangerous and defective condition of the awning, by the fall of which plaintiff was injured, existed, and amounted to a nuisance, on and prior to August 20, 1903, and on and prior to August 25, 1903.

Counsel for Salter & Co. further contends that on August 20, 1903, when Hand was still in possession under the ground lease, that Hand delivered possession of the premises to Heironimus & Heyman and made a *verbal* lease to them for the unexpired term mentioned in the ground lease, *before* the written assignment of the ground lease was made by Hand to Salter & Co., and before Salter & Co. executed the lease or instrument dated August 25th, and, hence, Hand had nothing to assign to Salter & Co., and the said written assignment of the ground lease passed nothing to Salter & Co., and, as a consequence, Salter & Co. never had any title or interest in the premises.

It is a sufficient answer to this contention to say that the question whether Hand made such a verbal lease was for the jury to decide, and that by their verdict they seemingly decided that question in the negative, and we think that it is shown by the preponderance of the evidence that no such verbal lease was made.

We are also of the opinion that no prejudicial error was committed by the trial court in refusing to give certain instructions offered by Salter & Co., as contended by counsel. And we do not think that the damages awarded by the jury are excessive. The judgment of the Superior Court is affirmed.

*Affirmed.*