Abraham Kalil, Appellant, v. Wolldenroot Operating Company, White-Grid, Inc., Isadore Kaplan and Morris Shaevitz, Appellees.

Gen. No. 45,066.

Heard in the third division of this court for the first district at the February term, 1950. Opinion filed May 24, 1950. Released for publication June 15, 1950.

DAVID ALSWANG, RALPH M. SCHWARTZBERG, and MARK T. BARNETT, all of Chicago, for appellant; DAVID ALSWANG, of Chicago, of counsel.

CASSELS, POTTER & BENTLEY, of Chicago, for certain appellee; KENNETH B. HAWKINS, of Chicago, of counsel.

O'BRIEN, HANRAHAN & KEOGH, of Chicago, for certain other appellee; RICHARD E. KEOGH and JOHN D. POPE, both of Chicago, of counsel.

MR. JUSTICE KILEY delivered the opinion of the court.

This is a personal injury action for damages for injuries to plaintiff while walking across a metal vault door in a Chicago sidewalk. Plaintiff sued the owners of the building to which the vault door led, the lessee of a corner restaurant in the building, and the lessee of the balance of the building, operated as a hotel. The City of Chicago was originally joined but was dismissed on plaintiff's motion. At the close of plaintiff's case, the Court directed verdicts for the lessees and entered judgment on the verdicts. Plaintiff was given leave to amend his complaint against the owners, the remaining defendants. Plaintiff has appealed from the judgments.

The building is located at the northeast corner of Jackson Blvd. and Halsted St. Defendants Kaplan and Shaevitz purchased it in 1944. Defendant White-Grid, Inc., operated a restaurant in the corner premises leased by it from the previous owners for several years and from the defendant owners in 1945. Defendant Wolldenroot Company operated the New Jackson Hotel in the balance of the premises under a lease made December 1, 1944, and assigned to it December 31, 1944.

The vault door was located in the north sidewalk of Jackson Blvd. about 50 feet east of Halsted St. It measured about 3' by 4', was made of metal, and consisted of a frame set in the sidewalk, and two halves, which opened one to the east and one to the west, which rested on the frame and were fastened to it by hinges. The east half was bordered on the west by a one and one-half inch metal strip which, when the door was closed, overlapped and rested on top of the west half.

60

There was also on the east half a rigid hasp which, when the door was closed, extended several inches over the west half. Near the west end of the hasp was a slit to accommodate a staple on the west half of the door. The hasp was near the north edge of the door and inside the building line. The door covered an opening which served the basement beneath, and through which goods were delivered for, the restaurant.

The accident occurred about 11:00 p. m. January 6, 1947. Plaintiff at the time was a bakery truck driver salesman 56 years old and weighed about 270 pounds. He had lived in the Vernon Hotel, about 150 feet east of Halsted St. on the north side of Jackson Blvd., since 1930. When injured, he was walking home. The sidewalk was covered with snow. A foot path about 20 inches wide had been worn by walkers. The north side of the path was about one foot south of the building line and led to the metal door which was clear of snow. The snow on the north side of the path was six or seven inches deep and on the south 15 or 18 inches deep. The level of the path was four or five inches higher than that of the vault door. Plaintiff, walking east from Halsted St. on the path, stepped down onto the west half of the vault door; it sagged about three inches; he lost his balance; his left foot caught the edge of the east half of the door; and he fell and suffered a fractured humerus.

The pertinent issues made by the pleadings were whether White-Grid, Inc. and Wolldenroot Co. were guilty of negligence proximately causing plaintiff's injury in failing to keep the door reasonably safe and in failing to keep it fastened so it would not sag or yield.

 The question here is whether the trial court properly directed verdicts for the lessee defendants. We shall consider only the evidence favorable to plaintiff and the legal inferences drawn therefrom most

strongly in his favor to determine whether there is any evidence tending to prove the elements of his cause of action.

Plaintiff's theories against White-Grid, Inc. are negligence in its failure to properly use the vault door of which it had possession and the doctrine of *res ipsa loquitur*.

█ The parties agree that the occupant of the premises is responsible for injuries arising out of the neglect or failure to keep the premises in repair except (a) where the owner covenants to make the repairs, (b) where the dangerous or defective condition causing the injury existed when the lease was made; (c), where the cause of the injury was a nuisance existing when the lease was made. *The West Chicago Masonic Association v. Cohn,* 192 Ill. 210; *City of Peoria, et al. v. Simpson,* 110 Ill. 294; *Gridley v. City of Bloomington,* 68 Ill. 47; *Tomle v. Hampton,* 129 Ill. 379; *Hanrahan v. F. Salter & Co.,* 182 Ill. App. 161. Plaintiff contends that the exceptions do not protect White-Grid, Inc. because there is no question here of disrepair, dangerous or defective condition or nuisance. He contends that White-Grid, Inc. was negligent in failing to fasten the vault door to prevent its sagging or yielding to plaintiff's step and weight.

It is clear from the testimony for plaintiff that the vault door hasp was not secured by a "pin", "padlock", or "nail" before or at the time of leasing and that when then stepped on, it would sag an inch or an inch and a half to the step of persons of normal weight.

█ There is no evidence that a pin, nail, bolt, or padlock through the staple over the hasp would have prevented the west half of the vault door from sagging under plaintiff's weight. There is no evidence of the construction of the vault door from which an inference could be made of that fact. The make-up of the door

does not justify our making the inference. The hasp was located near the north edge of the four foot wide vault door. We cannot assume that the purpose of the hasp was to prevent the vault door from sagging when it seems clear the reasonable purpose was to lock the door. We cannot assume the fastened hasp would have caused the halves of the door to sag only slightly so that plaintiff's toe would not have caught. There is no evidence from which to draw the inferences for which plaintiff contends. We agree with White-Grid, Inc. that to assume that the fastened hasp would have prevented the sagging would be speculation. Since plaintiff makes no other claim of specific negligence, we find there is no evidence tending to prove the allegation of negligence through failure to place a pin, etc., through the staple to secure the hasp. This disposes of the specific negligence theory.

Cases cited by plaintiff from foreign jurisdictions do not militate against our conclusion. In *Duffin v. Dawson,* 211 Pa. 593, 61 Atl. 76, the Court said the only conclusion that could be drawn from the evidence was that the cellar door fell because it had not been properly closed. In *Mondelli v. Caputo,* 174 N. Y. S. 625, the plaintiff alleged negligence against the landlord. The Court reversed a judgment for plaintiff saying the only evidence as to the condition of the hole or its cover was that there was no chain or fastening of any kind. Nothing is said of the liability of the tenant. In *Frischberg v. Hurter,* 173 Mass. 22, 52 N. E. 1086, a coal hole was involved and the evidence showed there was an "S" attached to it through which a piece of iron could be put so as to fasten it down securely. The Court thought that the cause of the accident was the neglect of the tenant to fasten the cover. In *Clapp v. Donaldson,* 195 Mass. 39, 80 N. E. 486 a coal hole was involved and the Court said the undisputed evidence showed an eye under the cover of the hole to which was attached a rope and that it would seem that

the insecurity of the cover was due to the tenant's neglect to fasten it properly. In *Stork v. Dorn,* 209 N. Y. S. 150, a coal hole was involved. The Court said the evidence showed the cover was not fastened as it should have been and that the testimony indicated negligence in failure to keep the cover properly placed and fastened. The testimony also was that the coal hole cover was loose and that after the accident a witness "found the chain fastened but slack not taut." In *Hobbs v. Tom & Pal, et al.,* 171 So. 593 (La.), an awning was involved. The Court said the evidence was conclusive that the pipe that struck plaintiff could not have been moved or pulled down had the necessary pin been in its proper slot in the slide rod. In *Salt Lake City v. Schubach,* 108 Utah 266, 159 P. 2d 149, a pedestrian was injured through a defect in a trap door under a chute or vault in the sidewalk. There the majority opinion decided that the City had a cause of action over against the tenant in possesion of the trap door who permitted a part of the metal lining to protrude above the sidewalk level because of worn rivets as a result of which another recovered against the City. In *Dammeyer v. Vorhis,* 63 Ind. App. 427, 113 N. E. 764, the plaintiff fell into a cellar opening from the sidewalk when the cellar door was left open on a dark night and the negligence alleged was the failure to provide a guard or danger signals. We think it is apparent that these cases are different from the one before us. It is probable that the equipment for fastening coal hole covers was for the purpose of keeping them from sliding. We deem it unnecessary to comment further on the other cases mentioned. We have not referred to all cases cited by plaintiff. The ones not referred to are no more applicable than the ones to which we have referred.

█ Assuming that this is a proper case for the application of the *res ipsa loquitur* doctrine, we nevertheless believe that the trial Court correctly decided

that there was no question for the jury. Plaintiff admits that the evidence shows there is no question of disrepair. We have disposed of the question of negligence though the failure to fasten. We think the evidence explains away any basis for an inference of want of due care on the part of White-Grid, Inc. causing the plaintiff's injury. There was nothing for the jury to determine because the uncontroverted evidence gave rise to a question of law which as to White-Grid, Inc. could be answered only in one way, i.e., it is not liable.

■ There remains but the question of the propriety of the Court's decision directing a verdict in favor of Wolldenroot Co. There is no evidence nor justifiable inference that the Wolldenroot Co. possessed or controlled in any way or to any extent the vault door or that part of the basement under White-Grid, Inc. to which the door led. Its lease specifically excepted from its possession that part of the basement to which the vault led. The lease imposed no obligation on it with respect to the vault door.

For the reasons given we believe that the trial Court properly directed verdicts as to White-Grid, Inc. and the Wolldenroot Co. and the judgments on these verdicts are affirmed.

*Judgments affirmed.*

Lewe, P. J. and Burke, J., concur.