CHARLES P. CRAIG and others *vs.* BIAGIO SUMMERS.

August 27, 1891.

**Landlord and Tenant—Extent of Covenant to Pay Taxes.**—Where, by the terms of a lease, the lessee assumed to pay "all taxes, levies, or assessments on the premises during the continuance of the lease," he is liable for taxes and assessments which have been "duly levied, charged, and confirmed" upon the leased property during the term, although they may be payable thereafter.

**Same—What Constitutes Assignment of Lease.**—Wherever a lessee grants or transfers the whole term for which the premises were leased to him, leaving no reversionary interest in himself, it amounts to an assignment, and is not a sublease. This results by operation of law, without regard to the form of the instrument. A mere reservation of rent, or of a right of re-entry for a breach of any of the conditions of the lease, will not change the legal relations of the parties; and the introduction of covenants into the instrument, whatever may be their effect between the immediate parties thereto, does not change the legal effect of giving up the reversion.

Appeal by plaintiffs from an order of the district court for St. Louis county, *Stearns,* J., presiding, refusing a new trial after verdict for defendant in an action to recover $426.29, taxes on demised premises, and $300, for rent of the same premises.

*H. F. Greene,* for appellants.

*Roger S. Powell,* for respondent.

VANDERBURGH, J. This action is brought to recover rent and taxes claimed to be due plaintiffs by virtue of a certain lease of premises occupied by defendant in the city of Duluth. The record shows that on February 13, 1882, one Wills was the owner in fee of the west half of lot 49, and the east half of lot 51, Duluth proper, first division, and at that date entered into a written lease with Ryan and McRae, of the lots described, for the term commencing on that day, and "ending on the 1st day of January, 1890," for a certain specified rental, the lessees also covenanting to pay "all rates, taxes, levies, or assessments on said premises during the continuance of the lease." The lease also contained a covenant for re-entry for non-payment of

the rent, and for a surrender of the premises at the expiration of the term. It also appears that on May 24, 1882, the lessees executed an instrument in the form of a sublease, (but which plaintiffs allege was, and was intended to be, an assignment *pro tanto* of the lease above mentioned,) whereby they in terms leased to Leavitt & Roux, parties of the second part, the above-described westerly half of lot 49, for the term commencing on the date of the lease, and ending "on the 1st day of January, 1890," at one-half the rental per year specified in the first-mentioned lease, and covenants to pay taxes, etc., and for re-entry and surrender; the covenants being copied *verbatim* from the original lease. This lease was afterwards assigned to the defendant, who entered upon the leased premises, and occupied the same during the continuance of the lease, and paid the rent till the expiration thereof. On the 28th day of September, 1889, the plaintiffs acquired, through mesne conveyances, the title in fee, and the reversionary interest of the first lessor, Wills, in the last-described leased premises. It is alleged in the complaint that the defendant also continued to occupy the premises after the expiration of his lease, for the further term of four months, to April 30, 1890, under an express parol agreement with these plaintiffs to pay rent at the same rate as theretofore paid by him under the lease, and to continue the same in force. It is also alleged that on the 1st day of January, 1890, the premises were subject to a lien for taxes, which were duly assessed, levied, charged, and confirmed on said property for the year 1889, for state, county, and city purposes, and that defendant has neglected to pay the same, and they have since been paid by the plaintiffs. The defendant admits the levy and assessment of the taxes as alleged, but denies that there was any contract to pay rent after the 1st day of January, 1890, according to the terms of the existing lease or otherwise; and he denies that the second lease, above mentioned, was, in law or fact, an assignment of the original lease as respects the premises in question, so as to bring the defendant in privity with the plaintiffs, and thus entitle them to recover the taxes paid by plaintiffs thereon for the year 1889.

1. Whether there was a contract to pay rent for the use of the premises, as alleged, for four months after January 1, 1890, was

submitted to the jury as a question of fact, and was determined by them in plaintiffs' favor. This finding establishes the agreement for the continuance of the existing lease, as alleged, until April 30, 1890, according to its terms. All its covenants remained operative till that date.

2. The language of the leases in respect to the payment of taxes is not very definite or clear. By the terms thereof the lessees are to "pay all rates, taxes, levies, or assessments on said premises during the continuance of this lease." We think a fair interpretation of the language would make Summers liable for the taxes and assessments which were levied, and became a fixed liability against the land, during the continuance of the original lease, and these taxes were such. A tenant, under a new lease with similar covenants, could hardly be expected to pay taxes and assessments levied upon the land the year before the commencement of his lease, or after it expired, unless he expressly agreed to do so. The arbitrary statutory rule fixing the date of liability of grantees has nothing to do with the question here considered. Summers, therefore, appears to have incurred this liability by virtue of the terms of his original lease, and the only further question to be considered is whether he is liable to the plaintiffs, as owners of the reversion; and that depends upon the further question whether the second lease, above mentioned, is to be treated as an assignment, or strictly a sublease merely.

3. Upon a careful consideration of the question, we are satisfied that the second lease amounted to a grant or assignment of the whole term, as respects the premises covered by that lease, leaving no reversionary interest whatever in Ryan and McRae, the original lessees. The language, as we have seen, being the same in each lease, the terms expire at the same instant of time. *Sexton* v. *Chicago Storage Co.,* 129 Ill. 318, (21 N. E. Rep. 920;) *Prescott* v. *De Forest,* 16 John. 159. The rule we have suggested is the doctrine of all the text-writers, supported by the great weight of authority, and by the later and best-considered cases. In 1 Woodf. Landl. & Ten. (Am. Ed.) 258, it is said: "An assignment, as contradistinguished from a sublease, signifies a parting with *the whole term;* and whenever the whole term is made over by the lessee, although in the deed by which

that is done the rent and a power of re-entry for non-payment are reserved to himself, yet the instrument amounts to an assignment, and not a sublease; and in such case the person to whom it is made over may sue the original lessor or his assignees of the reversion, or be sued by them, as assignee of the term, on the respective covenants in the original lease which run with the land, even though *new* covenants are introduced into the assignment." So, on page 124, a "lease" is defined to be a conveyance by way of demise, *always* for a less term than the party conveying has in the premises. Tayl. Landl. & Ten. § 16; 1 Wood, Landl. & Ten. § 327. Mr. Taylor says: "It is essential to a lease that some reversionary interest be left in the lessor, for, if by an instrument purporting to be a demise, he parts with his whole term, it will amount to an assignment of the term." This results by operation of law, without regard to the particular form of the instrument. The doctrine that reservation of rent, or a right of re-entry, is to be construed as a sufficient reversion, is declared by the last-named writer to be contrary to settled authority. And the rule is summed up by Mr. Wood (volume 1, p. 179, note,) as follows: "The weight of authority supports the rule that, in order to create a lease instead of an assignment, there must be a reservation of a reversion in the lessor, and that no form of an instrument can dispense with this requisite. A mere reservation of rent, or of a right of re-entry for a breach of any of the conditions of the lease, will not change the legal relations of the parties, * * * and the introduction of covenants into the instrument does not change the legal effect of giving up the reversion." *Woodhull* v. *Rosenthal,* 61 N. Y. 382.

It is also well settled that the same instrument may in law create an assignment of the term, as between the original lessor and the assignee, and also the relation of landlord and tenant between the parties to the second demise. *Stewart* v. *Long Island R. Co.,* 102 N. Y. 601, 608, (8 N. E. Rep. 200,) and cases. But this is the result of contract only, and not conclusive on the original lessor, who comes into privity of estate by reason of the grant or assignment of the whole term. *Sexton* v. *Chicago Storage Co.,* 129 Ill. 318, (21 N. E. Rep. 920,) and cases. This distinction seems to be lost sight of in

some of the cases. In others it is held that the introduction of a surrender clause determines the character of the instrument, and implies a reservation. But no such effect can be given to a covenant which only becomes operative, as in this case, after the expiration of the term. *Stewart* v. *Long Island R. Co.*, supra; *Blumenberg* v. *Myres*, 32 Cal. 93; *Schilling* v. *Holmes*, 23 Cal. 227. So the right of re-entry is not an estate or interest in land, nor does it imply a reservation of a reversion. It is a mere chose in action. When enforced, the grantor is in through the breach of the condition, and not by the reverter. Tied. Real Prop. § 277; *Sexton* v. *Chicago Storage Co.*, 129 Ill. 318, (21 N. E. Rep. 920.) In the case last cited the subject is fully considered, and the authorities, including those in New York and Massachusetts, carefully reviewed and distinguished.

Our conclusion is that, by the rules of law applicable to the case, the defendant is liable to the plaintiffs for the taxes for the year 1889, they being in privity of estate with him.

Order reversed.