LEWIS vs RICHARDSON.

Opinion delivered June 6, 1899.

*1. Judgment—Sufficiency of Evidence to Sustain.*

> Evidence examined and found sufficient to sustain a judgment allowing a set off by reason of misrepresentation of vendee in selling his interest in a lease.

*2. Sale of Leasehold—Liability of Vendee for Warranty.*

> Vendors of a leasehold interest having induced the landlord to take possession of a tract of land, which they had represented as being included in the lease became liable for the rental value of said tract for the unexpired term.

Appeal from the United States court for the Northern district.

WM. M. SPRINGER, Judge.

Action by J. M. Lewis and C. W. Mabry against J. I. Richardson. There was a judgment for less than the relief demanded. Plaintiffs appeal. Affirmed.

This is an action by the appellants against the appellee upon two promissory notes for the sum of $250 each and interest. The appellee answered, admitting the execution and delivery of the notes sued upon, but alleged that the consideration for their execution and delivery had failed. The allegations contained in appellee's answer and counterclaim are as follows: "Defendant admits the making of the two notes for $250 each, one of which was delivered to the plaintiff in this action, the other to C. W. Mabry; but defendant says that neither the plaintiff in this action nor the said C. W. Mabry is entitled to recover on said notes, be-

cause, on the 13th day of February, 1894, the plaintiff in this action, J. M. Lewis, and the said C. W. Mabry, by their certain written bill of sale, sold to this defendant the lease and improvements of the land then occupied by them. Said land had been leased from G. P. Bibles, the administrator of the estate of S. Nicholson, deceased, consisting, as the plaintiff, J. M. Lewis, and the said Mabry falsely and fraudently represented to this defendant, of three hundred and ten acres of land, which the defendant believed, for the term of seven years from the 1st day of January, 1892, for the sum of one thousand dollars, one-half of which sum—five hundred dollars—to be paid on March 1, 1894, and the other five hundred dollars to be paid on February 1, 1895. That, upon the payment of the five hundred dollars in cash, appellants were to deliver to him ninety acres of the said land, and the balance of the land—about two hundred and twenty acres—was to be delivered to him as soon as the crop of wheat had been harvested and threshed. That the defendant made the first payment of five hundred dollars about March 1, 1894, and gave the two notes sued upon for the balance, due on February 1, 1895. The defendant further alleges that Lewis and Mabry failed to perform their part of the contract, in this: that they did not give him possession of three hundred and ten acres of land, but that the land fell short one hundred and ten acres. He alleges that this one hundred and ten acres of land did not belong to the Nicholson estate, as the plaintiffs had falsely and fraudulently represented to him, and that said land, to wit, one hundred and twenty acres, was reasonably worth the sum of $2.50 per acre per year, and that he has been damaged in the sum of twelve hundred dollars, and demands judgment against the plaintiffs in that sum, less the amount o f these notes and interest." The plaintiffs replied, denying the false and fraudulent representations alleged by the defendant in his answer to have been made by them, and denied that the defendant believed

such representation, or that he was in any way misled by any statement that had been made to him in regard to the amount of land; denied that they had failed to perform their part of the contract, and to give the defendant possession of the land they contracted to give him; denied that the land fell short 120 acres, or any other amount, and denied that the land was reasonably worth $2.50 per acre per annum. From a verdict and judgment in the sum of $53 in favor of the plaintiffs, they appealed to this court.

*Preston C. West* and *Wm. T. Hutchings*, for appellants.

*James M. Shackleford* and *Wm. R. Shackleford*, for appellee.

THOMAS, J.    From a close inspection of the record in this case it appears that on the 1st day of June, 1892, George Bibles, as administrator of the estate of S. Nicholson, deceased, entered into a written contract with the appellant J. M. Lewis and with J. W. Bab, by the terms of which he leased and rented to them all the improvements located on the estate of S. Nicholson, deceased; "said improvements situated south of Talala creek and west of the Verdigris river, in Cooweescoowee district, Cherokee nation and Indian Territory, for seven years from the first of June, 1892. The said parties of the second part agree to break and fence two hundred acres of land or more on said claim, and are to have five crops off of the land that the said parties of the second part break and fence, and the said parties of the second part agree to give the party of the first part one-third of all crops raised on what land is now in cultivation on said premises (about 20 or 30 acres). Said parties of the second part surrender to the party of the first part said premises above named in as good condition as use and wear will permit; and said party of the first part agrees that the said parties of the second part, doing as they agree, shall have

possession and use of the said premises for the term of seven years from the date of this agreement." The appellant C. W. Mabry afterwards succeeded to the rights of J. W. Bab under this contract, and became the partner of J. M. Lewis, by consent of the landlord, G. P. Bibles. On the 13th day of February, 1894, Lewis and Mabry executed and delivered to the appellee, J. I. Richardson, the following bill of sale or assignment of the foregoing contract as follows:

"Cherokee Nation, Indian Territory, February 13th, 1894. Know all men by these presents, we hereby sell to J. I. Richardson all of the lease and improvements of the land now occupied by us and leased from G. P. Bibles, as administrator of the S. Nicholson estate, for the consideration of one thousand dollars, one-half to b e paid by draft on the Kansas City Bank of Missouri on March 1st, 1894, and the balance, five hundred dollars, to be paid February 1st, 1895, and possession to be given to J. I. Richardson, on receipt of first payment, of premises, and all the land not now sown to wheat, which is ninety acres, more or less; and we further agree to give possession of wheat ground, two hundred and twenty acres, after the crop now in is harvested and stacked or threshed; and we further agree to give one-third of the wheat now sown next to the corn ground, about fifteen or eighteen acres. [Signed] J. M. Lewis. C. W. Mabry. Witness: V. Allyn."

The lease of G. P. Bibles, administrator, to Lewis and Bab, was at about the same time of the execution of the above bill of sale assigned to the appellee, J. I. Richardson, by an indorsement upon the original lease, which was in words and figures as follows, to wit:

"Cooweescoowee District, Cherokee Nation, I. T. February 13th, 1894. The parties of the second part transfer all their right, title and interest in the above-described

property to J. I. Richardson for a fixed amount; the said Richardson is to put seven wires on the posts now set on the west side of the new Nicholson field, about 80 or 100 rods. [Signed] J. M. Lewis. Witness: G. P. Bibles. V. Allyn."

"This lease or contract is not transferable until the last payment is made, which shall be February 1st, 1895, if the contract is fulfilled. [Signed] J. I. Richardson."

The testimony which in any wise refers to the issues made by the pleadings in this case, is briefly summed up as follows: First. The bill of sale from Lewis and -Mabry called for 310 acres of land, and stated that it was the land leased from G. P. Bibles, as administrator of the S. Nicholson estate. Second. The lease from George Bibles, administrator, to J. M. Lewis and J. W. Bab, which was assigned to the appellee, J. I. Richardson, did not describe the land leased with any particularity, or by metes and bounds, or the number of acres; but the term was to be seven years from June 1, 1892, and the assignment of it to Richardson was dated February 13, 1894, and this assignment mentions "the new Nicholson field," which seems to have been the same tract of land that the appellee alleges the appellants failed to deliver him possession of. Third. The appellee, Richardson, testified that the appellants told him that this 120 acres of land was held by them under the same contract as the Nicholson estate, but that it was on Mr. Bibles' homestead, and that Mr. Bibles contracted the same number of years; that it was held on the same kind of a contract for the same number of years; that the appellants never delivered possession of it to him; that, as soon as the crops were gathered off of it, Bibles took possession of it, commenced plowing it, and leased it out. Mr. Allyn, who was with the appellee at the time he bought the unexpired term of this lease, and witnessed the transfer, testified that

he and Mr. Richardson and Mr. Mabry got into a spring
wagon, and drove around the field; that when they came to
this tract of land, containing about 120 acres, Mabry told
them that it was included in the sale to Richardson, and that
he and Lewis had it under lease, and that it was not mention-
ed that this 120 acres of land was not embraced in the or-
iginal contract; that, after the transfer had been made to Mr.
Richardson, he understood that this 120 acres had been
rented at the same time as the Nicholson estate land, but
from Mr. Bibles individually. Witness Hoffman: That he
went to take possession of this 120 acres of land for Rich-
ardson, but that Bibles refused to give it up, stating that it
did not belong to the lease, and that he was going to rent it.
The appellant Lewis told Richardson, in the presence of
witness, to bring suit against Bibles for this land, and that
he would assist him. Mr. George P. Bibles, the landlord,
testified that on the day before or the day after the transfer
of the unexpired term from Lewis and Mabry to Richardson
he asked Lewis if he had included this 120 acres of land in
the transfer to Richardson, and Lewis said, "No." This
testimony is uncontradicted. The witness Bibles further
testified that all of the 310 acres were in the same inclosure;
that the 120 acres in dispute were south of the road from
the other part of the tract, and that he never had had a con-
tract of any kind with Lewis and Mabry on this 120 acres;
and that Lewis and Mabry both told him that this land was
not included in their assignment or transfer to Richardson,
that this land was worth two dollars per acre per annum.
Mrs. Bibles testified that the appellant Lewis told her
husband, George Bibles, in her presence, that he and Mr.
Mabry did not include this 120 acres of land in the transfer
or assignment to Mr. Richardson, and that Mr. Bibles now
had 100 acres more of land than he had before. The ap-
pellant J. M. Lewis testified that Richardson and Allyn came
to his house, and proposed to buy the unexpired term of this

lease; that they were both strangers to him; that, as he had taken in Mr. Mabry as a partner, he would have to consult him, and would also have to get the consent of his landlord; that he went over the land with Richardson and Mr. Allyn, in a buggy, and that when they came to this 120-acre tract he said to them: ''Gentlemen, this piece of land, I want you to understand that while it is a part of the lease, it is not named in the lease, and if you want it in, now is your time to put it in.'' He also testified that after they had made this assignment to Richardson, and before the cash payment had been made, he and Mabry came to the conclusion they sold the land too cheap, and that when Richardson came down from Kansas City, about the 4th of March, 1894, they told him that they considered the contract was not binding upon them, because he was several days late in making his cash payment, which was to have been made on March 1st, and that they tried to talk Richardson out of it. He also testified that they only agreed to let Richardson have 200 acres. The other appellant, C. W. Mabry, testified that he also went with Richardson to see all the land, including this 120 acres; ''explained to him how the lines ran, and told him that we had this one hundred and twenty acre tract the same as the other, although it was not named in the lease, and that we had also broken some of the Nicholson estate land that was named in the writing." Appellant J. M. Lewis was recalled, and in answer to the question of his counsel testified that this 120-acre tract of land belonged to both the Nicholson estate and to Bibles individually. The foregoing is briefly all the testimony which has any bearing upon the issues in this case.

We have examined the authorities cited by counsel for appellants,—Wood, Landl. & Ten. § 320; 2 Am. & Eng. Enc. Law (2d Ed.) p. 1048, note 8; Craig vs Summers, 47 Minn. 189, 49 N. W. 742; and Sexton vs Storage Co. (Ill.)'21 N. E. 920,—all sustaining the principles contended for by appellants that ''an assignment, as contradistinguished

from a sublease, is a transfer of the whole term either of a part or all of the demised premises; but, when the lessee holds the demised premises for a less period than the time of his unexpired term, it is under a sublease." So that the instruments executed by Lewis and Mabry to Richardson are, in law, an assignment of the whole of their unexpired term. We have also examined the authorities cited by appellants to sustain their contention that the maxim of caveat emptor would apply in this case, and that the appellee would be charged with knowledge that this 120 acres was simply held under a verbal lease of four years from Bibles individually. Wood, Landl. & Ten. § 361, cited by appellants, reads as follows: "A lease is a purchase per tanto, to whom the maxim caveat emptor applies. Therefore, he must, at his peril, ascertain that the intended lessor has sufficient title to demise for the proposed term. * * * * An under-lessee, who neglects to inquire into the provisions of the original lease, does so at his own risk. An assignment of a term for years is therefore governed generally by the rules applicable to the sale of personal property, while as to the quality of the thing sold caveat emptor is the general rule; the seller impliedly warrants the title." See Jeffers vs Easton, Eldridge & Co. (Cal.) 45 Pac. 680, cited by appellants. The preponderance of testimony in this case shows, we think, that the appellants lead the appellee, Richardson, to believe that this 120-acre tract of land was held by them for a period of seven years—four years still remaining—under the same contract, or the same kind of a contract, as they held the lands of the Nicholson estate; and not only by their words did they lead him to believe that this tract was included in the transfer or assignment to him, but by their written assignment transferred it to him; and that they would be estopped by their deed from setting up that they only transferred him 200 acres. The testimony of Mr. and Mrs. Bibles is to the effect that the appellants told

the landlord, Geo. P. Bibles, that they had not included this 120 acres in their assignment to Richardson (when they really had); thus inducing the landlord to refuse Richardson possession of it, and to take possession of it himself, and rent it to another party.    As the original lease from' Bibles to Lewis and Mabry which was assigned to the appellee, did not describe with particularity the tract of land leased or the number of acres, and as these two tracts of land were within the same inclosure, we do not think that the appellee, Richardson, was charged, in law, with knowledge as to the . number of acres held by the appellants under this written lease; and that he had a right to rely upon the statements made by them to him that this 120-acre tract was a part of the same contract, or held by them under a like contract; and when they induced the landlord, Bibles, to take possession of this 120 acres, and to keep it from the appellee, Richardson, for the balance of the unexpired term, we think that the appellee, Richardson, was entitled to recover from 'the appellants the rental value of this 120 acres for the balance of the unexpired term of four years.

The instructions of the trial court to the jury in this case on the whole, were, in our opinion most favorable to the appellants.    The instructions complained of by the appellants is as follows:  ''Ninth.    The court further instructs the jury that if you shall believe from the evidence that the plaintiffs after they had made the bill of sale in question, falsely and frauduently induced George P. Bibles to believe that he was entitled thereafter to the possession of the one hundred and twenty acres of land mentioned in the evidence, and, relying upon such false and fraudulent representations, he was induced to take possession of the said one hundred and twenty acre tract of land, and to withhold the possession thereof from the defendant, and that he did so take possession thereof in consequence of such false and frudulent representations, the plaintiffs in this case are es-

topped from saying that they gave the defendant possession of said one hundred and twenty acre tract of land; and if you should so find from all the evidence in the case, you may further find that the defendant is entitled to credit upon the notes in question to the amount of the rental value of said one hundred and twenty acre tract of land for the term of four years." We are of the opinion that there is no error in this instruction prejudicial to the appellants, and that the apellee, as against the appellants, had the right to the possession of said tract of land for the remaining four years, and when by their own acts and false representations made to the landlord, in which they stated that they had not transferred this 120-acre tract of land, they caused the appellee to be deprived of the land, we are of the opinion that he was entitled to recover the rental value of the tract for the term of four years, and to have a credit upon the notes sued upon for that amount as determined by the jury. "Nemo contra factum suum venire potest,"—no man can contradict his own deed. 2 Coke, Inst. 66. "No man should be permitted to take advantage of his own wrongdoing." No error appearing in the record in this case, the judgment of the lower court is affirmed.

CLAYTON and TOWNSEND, JJ., concur