# WATSON P. DAVIDSON v. MINNESOTA LOAN & TRUST COMPANY.[1]

March 21, 1924.

No. 23,708.

**Definition of lease.**

1. A lease is both an executory contract and a present conveyance, and creates a privity of contract and a privity of estate.

**Definition of assignment of lease.**

2. An assignment of a lease transfers the privity of estate, but not the privity of contract.

**Definition of sublease.**

3. A sublease for the whole term is in law an assignment as between the original lessor and the sublessee, but may be given effect as a contract as between the sublessor and sublessee.

**When sublease does not operate as assignment of lease.**

4. If a sublease retains any part of the term, however small, in the sublessor, it does not operate as an assignment but only as a sublease.

**Sublease for full term.**

5. The sublease here involved was for the full term.

**When sublessor may enforce right to re-enter.**

6. Even if a sublease leaves no reversion in the sublessor, if it contains covenants of advantage to him and gives him the right to re-enter for breach thereof, he may enforce this right on failure to perform such covenants.

**Proviso of statute not involved.**

7. The rights given to a tenant by the last proviso of chapter 428, Laws of 1917, are not involved herein.

Action in the district court for Ramsey county to reform a sublease from plaintiff to Perry K. Gilfillan, to recover possession

[1]Reported in 197 N. W. 833.

of the premises leased and for $5,000. The facts are recounted at the beginning of the opinion. The case was tried before Sanborn, J., who made findings and ordered judgment in favor of plaintiff, unless within 30 days from the entry of judgment the payments due under the sublease be paid to plaintiff. Defendant's motion to amend the findings and conclusions was denied. From an order denying its motion for a new trial, defendant appealed. Affirmed.

*Charles J. Tryon* and *James M. Martin,* for appellant.

*Lightner & Young,* for respondent.

TAYLOR, C.

On November 25, 1911, the owners of a tract of land in the business part of the city of St. Paul leased it to plaintiff, "from the first day of December A. D. nineteen eleven (1911), for and during the full term of one hundred (100) years next ensuing, that is to say, until the thirtieth day of November two thousand and eleven (2011)."

The lease provided for an annual rental of $5,100 during the first 10 years, payable in 12 monthly instalments of $425 each on the first business day of each and every calendar month in advance; for an annual rental of $5,400 during the second 10 years payable in monthly instalments of $450 each; and for an annual rental of $5,700 during the remainder of the term, "that is, the next eighty (80) years, from December 1, A. D. 1931, to and including November 30, A. D. 2011," payable in monthly instalments of $475 each in the manner thereinbefore set forth. The lease also contained numerous other provisions including a provision for re-entry in case the lessee should fail to pay the rent as stipulated or to perform any of the covenants to be performed by him. At the same time and as a part of the same transaction the owners gave plaintiff an option to purchase the property at any time before the first day of December, 1921, on the terms therein stated.

On January 13, 1916, plaintiff leased the property to Perry K. Gilfillan "from the first day of January A. D. 1916, until the thirtieth day of November A. D. 2011, yielding and paying for the same each and every year during said term the sum of ten thousand ($10,000) dollars lawful money of the United States of

America, in twelve (12) monthly instalments of eight hundred thirty-three and 33/100 ($833.33) dollars each, on the first business day of each and every calendar month in advance, that is to say, on the first day of January, A. D. 1916, and thereafter on the first business day of each and every calendar month throughout said term."

Gilfillan covenanted to pay the stipulated rent each month; to pay all taxes and assessments before any penalty attached for non-payment and in each case to furnish plaintiff with proper proof of such payment; to surrender possession of the premises to plaintiff "on the last day of said term or other sooner determination" thereof; to observe and obey all laws and all city ordinances and regulations relating to the use or occupation of the premises, or the construction or maintenance of buildings thereon; to give plaintiff a bond before beginning the construction of buildings or the making of improvements to secure the payment and discharge of all claims which might become liens on the property; to keep all buildings insured with a provision in the policy that the proceeds thereof should be used in rebuilding or repairing the buildings destroyed or damaged by fire; and to keep the buildings in repair and replace any destroyed. The lease also contained a provision that the waiver by plaintiff of a breach of any covenant or condition should not operate as a waiver of any subsequent breach thereof; also a provision that all payments to be made under the lease should be made at such place in the city of St. Paul as plaintiff should from time to time designate by writing delivered to the lessee or his assigns, and also a provision for re-entry in case the lessee should fail to pay the rent as stipulated or to perform any of the covenants or conditions to be performed by him.

Except as indicated by the provisions above mentioned, the provisions in this lease are identical in form with those in the lease from the owners to plaintiff, but this lease makes no reference whatever to that lease, nor to the fact that plaintiff held the property under a lease. So far as this instrument discloses, plaintiff appears to have been dealing with the property as owner, but in fact the parties had the original lease before them while preparing this.

Gilfillan assigned one-half of his interest under his lease to William J. Hoy, and he and Hoy proceeded to erect a business building on the property. To procure funds for constructing the building they issued bonds in the sum of $50,000 in January, 1917, and secured the payment of them by executing to defendant a trust deed of the building "together with the leasehold interest in said real estate under that certain ground lease made by Watson P. Davidson * * * party of the first part, and Perry K. Gilfillan * * * party of the second part, dated January 13, 1916, * * * with all the rights and privileges under and by virtue of said ground lease and subject to all the terms and conditions thereof, together with all buildings and improvements hereafter to be erected thereupon, and the rents and income due or to become due from any thereof".

Plaintiff has paid to the owners the rents stipulated for in the original lease as they became due and has performed all the terms and conditions of that lease. Gilfillan paid to plaintiff the rents stipulated for in the sublease as they became due until May, 1920, when he became financially embarrassed. In August, 1920, defendant began an action to foreclose its trust deed upon the leasehold held by Gilfillan, and was appointed receiver, and took possession of the property, and has retained possession ever since. At the foreclosure sale defendant bid in the property as trustee for the bondholders. The time for redemption expired in May, 1922, and defendant has succeeded to all the interest in the property acquired by Gilfillan under his sublease.

After taking possession as receiver, defendant asserted that the sublease operated as an assignment to Gilfillan of the original lease, that the covenant to pay rent to plaintiff was merely the personal obligation of Gilfillan, and that defendant as receiver was only liable for the rentals reserved to the owners in the original lease. However, on plaintiff's threat to terminate the sublease unless the rents stipulated for therein were paid, defendant paid them under protest until the time to redeem from the foreclosure sale expired in May, 1922. Thereafter defendant, claiming that plaintiff had parted with all his interest in the property, refused

to make further payments to him, but offered to pay to the owners the rents reserved in the original lease. But the owners received their rents regularly from plaintiff and never accepted any from defendant. Plaintiff served notice to terminate the sublease for default in its conditions, demanded possession of the property and thereafter brought this action. The trial court found that plaintiff was entitled to judgment for the rents in arrear, and for possession of the property, unless such rents were paid within 30 days after the entry of judgment. Defendant appealed from an order denying a new trial.

Defendant contends that the sublease was for the full term then held by plaintiff; that being for the full term it was not a sublease, but operated as an assignment of the original lease, leaving no interest in the property in plaintiff; that Gilfillan as assignee of the original lease and defendant as his successor in interest became the tenant of the owners, but not of plaintiff, and is entitled to hold the property by complying with the terms of the original lease without complying with those of the sublease; and that the failure to perform the conditions of the sublease gives plaintiff no right to reclaim the property, although it may give him a cause of action against Gilfillan personally for breach of contract.

With the theory of feudal tenures as a basis, the common law developed an elaborate, complicated and highly technical system of rules regulating and governing the creation and transfer of estates and interests in real property, and fixing and defining the rights and obligations springing from the grant or transfer of such estates or interests. These rules still determine, to a large extent, the rights and obligations arising from the relation of landlord and tenant, and the courts, feeling constrained to apply them except as changed by statute, sometimes find difficulty in giving to present-day contracts the effect which the parties intended their contracts to have.

A lease is both an executory contract and a present conveyance, and creates a privity of contract and a privity of estate between the lessor and the lessee. The authorities hold that where the lessee relets for his whole term, the instrument, whatever its form, oper-

ates as an assignment of the original lease to the extent, at least, of transferring the privity of estate from the lessee to the sublessee, and thereby creates the relation of landlord and tenant between the original lessor and the sublessee, and gives the original lessor the right to enforce against the sublessee all the covenants which run with the land, including the covenant to pay rent. But the original lessee still remains bound by his contract and liable to the original lessor for any default therein. The authorities also uniformly hold that where a lessee relets but retains a part of the term, however small, the instrument is only a sublease and does not create the relation of landlord and tenant between the sublessee and the original lessor.

The trial court construed the original lease in question as including the thirtieth day of November, 2011, and the sublease as not including that day; and, on the ground that the sublease did not cover the full term of the original lease, held that it did not operate as an assignment of the original lease, but only as a sublease. The original lease is from a given date "until the thirtieth day of November two thousand and eleven." Other provisions of the lease clearly show that the thirtieth day of November was intended to be included in the term. The sublease is from a given date "until the thirtieth day of November, A. D. 2011," and, while this lease differs from the first in not specifically stating that that day is included in the term, we think that other provisions of the instrument clearly show that such was the intention of the parties— particularly the provision requiring payment of a full month's rent in advance on the first business day of the last calendar month of the term.

The sublease, being for the whole term, operated as an assignment, although it contained different conditions and was for a larger rent than the original lease, and the question presented is whether the fact that in law it amounted to an assignment precludes plaintiff from enforcing the right, expressly reserved, to re-enter and repossess himself of the premises for nonpayment of the stipulated rent or other breach of the conditions. The decisions defining the rights and obligations which such an instru-

ment creates as between the original lessor and the sublessee are in fair agreement, but the decisions defining the rights and obligations which it creates as between the original lessee and the sublessee are not in agreement. Some are to the effect that a sublease for the whole term operates as an assignment only and does not place the original lessee in the relation of landlord to the sublessee nor give him the right to re-enter for condition broken. Others are to the effect that such a sublease may in law amount to an assignment as between the original lessor and the sublessee and may also be given the effect as between the original lessee and his sublessee which they intended it to have·

The English cases are to the effect that, although a sublease for the full term may operate as an assignment as between the original lessor and the sublessee, yet it creates the relation of landlord and tenant between the sublessor and his sublessee if it contains covenants and conditions of advantage to such sublessor with the right to re-enter for breach thereof.

In Doe ex dem. Freeman v. Bateman, 2 Barn. & Ald. 168, Bateman having a term for years leased the premises to Freeman for the whole term reserving rent and subject to the condition that Freeman should not open a public-house on the premises without a license in writing from Bateman. It was held that Bateman was entitled to re-enter for breach of this condition. The court [at page 170] said:

"The only argument adduced against the right of entry or validity of the condition was, that an entry must always be made by a person entitled to the reversion, and by no other; and consequently that as the original termor had in this case, by the deed of assignment, parted with his whole estate, and no reversion was left to him, he could not enter. And, to be sure, if the premises here assumed be true, the conclusion is properly drawn. But we think the premises from which the conclusion was drawn are untrue."

And the court added that the fact that, even in case of a grant in fee on condition, the grantor could enter for condition broken, though he had no reversion, showed them to be untrue.

In Williams v. Hayward, 1 Ell. & Ell. 1040, the lessee relet for the full term. The court held that, although he had no reversion, he could sue on the lease for rent and need not sue on the covenant as for a sum in gross.

In Baker v. Gostling, 1 Bing. N. C. 19, the lessee relet to defendant for a term longer than his own and for a larger rent. After his death his executors sued defendant for the rent. It was held that the instrument created the relation of landlord and tenant. The court [at page 27] said:

"Where the whole of a term is assigned, a gross sum reserved periodically to the assignor is a payment in the nature of rent. And if it were held otherwise, great injustice might be occasioned, as the tenant, if evicted, would have no answer to an action on his covenant for payment of the sum in question; whereas if it be considered as rent, eviction would be an answer to the lessor's claim."

In Pollock v. Stacy, 9 Q. B. 1033, the lessees relet to defendant for the full term reserving rent, and sued defendant for the rent. Lord Denman, C· J. [at page 1033] said:

"We see no inconvenience in supporting as a lease that which was intended to be so, although it may pass all the lessor's interest."

In Preece v. Corrie, 5 Bing. 24, the lessee relet for his entire term. It was held to be a lease and not an assignment as between him and the sublessee.

In 18 Am. & Eng. Enc. (2d. ed.) 658, it is said:

"While one receiving from a lessee the interest in his whole term incurs the liability of an assignee to the original lessor, the transaction may create, if so intended, the relation of landlord and tenant between the lessee and the sublessee, on the ·principle of a reversion by estoppel, so as to confer on, the original lessee, as against the sublessee, the rights and remedies of a landlord."

In 16 R. C. L. 825, it is said:

"According to numerous decisions the same instrument may in

law create an assignment of the term, as between the original lessor and the assignee, and also the relation of landlord and tenant between the parties to the second demise."

In Linden v. Hepburn, 3 Sandf. (N. Y.) 668, the lessees sublet for the full term and brought suit for possession against the subtenant for default in the conditions of the sublease. The court said:

"The only ground presented by the demurrer which required any serious consideration, is that no right of entry exists in the plaintiffs; that the lease executed by them to West, operated as an assignment of the original lease, pro tanto, and there being no reversionary interest in the plaintiffs, they cannot recover. Whatever the effect of this lease might be, as between West and the original lessor of the demised premises, we have no doubt that as between West and the plaintiffs, it is to be regarded as a sublease, and not as an assignment of the original term. The right to re-enter was reserved to the plaintiffs, and this suffices to enable them to enter for breach of the conditions, although there be no reversion remaining in them."

In Post v. Kearney, 2 N. Y. 394, 51 Am. Dec. 303, the owner brought suit against the assignee of the lease, who defended on the ground that he had relet for the full term. The court held that the sublessee held as under-tenant and not as assignee because he had covenanted to pay rent to the sublessor and to surrender the premises to him at end of the term.

In Collins v. Hasbrouk, 56 N. Y. [11 Sickels] 157, 15 Am. Rep. 407, the opinion of the court is summarized in the syllabus as follows:

"Where a lessee executes an instrument conveying the whole of his unexpired term, but reserving rent at a different rate and time of payment from the original lease, and a right of re-entry on nonpayment and on breach of other conditions, also providing for a surrender of the premises to him on the expiration of the term, the instrument is a sub-lease not an assignment."

Ganson v. Tifft, 71 N. Y. [26 Sickels] 48, approved and reaffirmed the doctrine of Collins v. Hasbrouk, supra, and distinguished Wood-

hull v. Rosenthal, 61 N. Y. 382, on the ground that the instrument considered in that case contained no provision for re-entry or for surrender of the premises at the expiration of the term.

In Stewart v. Long Island R. Co. 102 N. Y. 601, 8 N. E. 200, 55 Am. Rep. 844, the sublease was for a longer term than the original lease. The original lessor sued the sublessee for rent reserved in the original lease. In holding that the sublease was an assignment as between the original lessor and the sublessee, the court [at page 607] said:

"Where a lessee of land leases the same land to a third party, the question has often arisen whether the second lease is in legal effect an assignment of the original lease, or a mere sublease. The question has frequently, and probably most generally, arisen between the lessee and his transferee, and much confusion will be avoided by observing the distinction between those cases, and cases where the question has been between the transferee and the original landlord. In the latter class of cases the rule is well settled that if the lessee parts with his whole term or interest as lessee, or makes a lease for a period exceeding his whole term, it will, as to the landlord, amount to an assignment of the lease, and the essence of the instrument as an assignment, so far as the original lessor is concerned, will not be destroyed by its reserving a new rent to the assignor with a power of re-entering for non-payment, nor by its assuming, by the use of the word *demise* or otherwise, the character of a sub-lease; and the assignee, so long as he continues to hold the estate, is liable directly to the original lessor on all covenants in the original lease which run with the land, including the covenant to pay rent. [Citing authorities.] But as between the *original lessee* and *his lessee* or transferee, even though the original lessee demises his whole term, if the parties intend a lease, the relation of landlord and tenant, as to all but strict reversionary rights, will arise between them. The effect, therefore, of a demise by a lessee for a period equal to or exceeding his whole term is to divest him of any reversionary right and render his lessee liable, as assignee, to the original lessor, but at the same time the relation of landlord and tenant is created between the parties to the

second demise, if they so intended.   [Citing authorities.]   These rules are fully recognized in this state."

In Shumer v. Hurwitz,49 Misc. 121, 96 N· Y. Supp. 1026, the lessee relet for the entire term by an instrument which reserved a new rent, a right of re-entry for condition broken, and which provided for a surrender of the premises at the end of the term.   Held a sublease and that the lessee could maintain an action for possession against the sublessee for condition broken.

In Murdock v. Fishel, 67 Misc. 122, 121 N. Y. Supp. 624, the lessee relet for the entire term reserving the right to re-enter for condition broken and to receive possession at the end of the term. Held a sublease.   Phelan v. Kennedy, 185 App. Div. 749, 173 N. Y· Supp. 687, is to the same effect.

In Potts-Thompson Liquor Co. v. Potts, 135 Ga. 451, 69 S. E. 734, the owner had leased to Potts at a rental of $500 per month, and Potts had sublet to the liquor company for the full term, the liquor company to pay the owner the original rent of $500 per month and to pay Potts an additional rent of $250 per month. Potts brought suit on the sublease.   The court [135 Ga. 458] quoted the concluding paragraph of the above excerpt from Stewart v· Long Island R. Co. 102 N. Y. 601, 8 N. E. 200, 55 Am. Rep. 844, with the comment that "the distinction thus brought out is recognized by many authorities, although not always so clearly stated." The court then referred to the covenants in the sublease and to the provision for re-entry and [135 Ga. 459] said:

"Taking the instrument as a whole, we think there can be little doubt that, as between F. M. Potts and the liquor company, the intention of the parties was to create the relation of landlord and tenant, and not merely to assign or transfer the lease."

In Sexton v. Chicago Storage Co. 129 Ill. 318, 21 N. E. 920, 16 Am. St. 274, the lessee relet for the full term.   The original lessor sued the sublessee for rent.   The court held that the sublease amounts to an assignment of the original lease, and that the sublessee was liable directly to the original lessor for the rent, but

recognized that the relation of landlord and tenant might still exist between the original lessee and the sublessee, saying [at page 327]:

"Undoubtedly many cases may be found wherein the lessee has granted to another party his entire term, retaining no reversionary interest in himself, and it has been held the relation as between the parties was that of landlord and tenant,—or, perhaps more correctly, lessee and sub-lessee,—because such was clearly the intention of the parties; but this was the result of contract only."

In Hanrahan v· F. Salter & Co. 182 Ill. App. 161, the question was whether a lessee who had relet the premises for the whole term stood in the relation of landlord to the sublessee. The court held that this depended upon the intention of the parties, and that the fact that the sublease reserved a larger rent than the original lease with a right to re-enter for condition broken, and provided for a surrender of the premises to the lessee by the sublessee at expiration of the term, clearly showed that the parties intended to create the relation of landlord and tenant.

In Dunlap v. Bullard, 131 Mass. 161, 162, the original lease was assigned to Shepherd Ostrom, who relet for the full term. The court said:

"In the case at bar, the interest which came to the defendant was conveyed by a lease of the premises containing all the agreements and covenants usually found in such an instrument. There is no reference in it to the original demise, and no indication of an intention on the part of Ostrom, the sub-lessor, to part with his whole interest in the leasehold estate, or to lose control of it as lessor. He provides that Johnson, the tenant, shall hold under him and pay rent to him and no one else. The rent reserved was larger in amount than that reserved in the original lease, and was payable at different times, and the lessee covenants to deliver up the premises to Ostrom, the lessor, at the end of the term. But what is more in point, the right is reserved to the lessor to enter and expel the lessee for nonpayment of rent, or breach of any of the covenants in the lease. It is clear that the parties to this lease intended to create the relation of landlord and tenant between them-

selves. And it is the duty of the court to give effect to this intention, unless controlled by some positive rule of law."

In Essex Lunch, Inc. v. Boston Lunch Co. 229 Mass. 557, 559, 118 N. E. 899, Kelsey, the lessee, relet to defendant for the entire term reserving the right to re-enter on breach of any of the covenants. The court said:

"The lease to the defendant was an underlease and not an assignment * * * Kelsey had a substantial interest in the premises underlet to the defendant; he had the right to use and enjoy the premises let to the defendant for the remainder of the term, upon a surrender or forfeiture of the sublease for any breach of covenant."

In Behr v. Hurwitz, 90 N. J. Eq. 110, 105 Atl. 486, it is said [at page 115]:

"The sublease may, as between the original lessor and sublessee, constitute an assignment in law; yet, as between the lessee and sublessee, the relation of landlord and tenant may subsist if they so intend."

In Cross v. Bouck, 175 Cal. 253, 165 Pac· 702, the original lease contained a covenant against assigning, but not against subletting. It was held that a sublease on different terms and conditions, although for the whole term, was in fact a sublease and did not violate this provision.

In Davis v. Vidal, 105 Tex. 444, 151 S. W. 290, 42 L. R. A. (N. S.) 1084, the lessee relet for the full term, but reserved the right to re-enter and repossess himself of the premises on failure of the sublessee to pay the rent to him as agreed. The court held that this right gave him a contingent reversionary interest in the estate which would enable him to forestall the original lessor in declaring a forfeiture and which made the instrument a sublease· In the syllabus it is said:

"Any reservation of a reversionary interest in the grantor, even of the right to enter and dispossess the grantee on non-payment of rent, makes the contract one of subletting and not of assignment."

See also United States v. Hickey, 84 U. S. 9, 21 L. ed. 559. Collamer v. Kelley, 12 Iowa 319; St. Joseph & St. L. Ry· v. St. Louis I. M. & S. Ry. Co. 135 Mo. 173, 191, 36 S. W. 602, 33 L· R.A. 607; Wray-Austin Machinery Co. v. Flower, 140 Mich. 452, 103 N. W. 873; Hammond v. Dean, 8 Baxt. (Tenn.) 193.

In Craig v. Summers, 47 Minn. 189, 191, 49 N. W. 742, 15 L. R. A. 236, the lessee relet for the full term. The owner brought suit on the covenants in the original lease against the assignee of the sublease. The court said:

"We are satisfied that the second lease amounted to a grant or assignment of the whole term * * * leaving no reversionary interest whatever in * * * the original lessees. [Citing and quoting authorities·]

"It is also well settled that the same instrument may in law create an assignment of the term, as between the original lessor and the assignee, and also the relation of landlord and tenant between the parties to the second demise. Stewart v. Long Island R. Co. 102 N. Y. 601, 608 (8 N. E. Rep. 200), and cases. But this is the result of contract only, and not conclusive on the original lessor, who comes into privity of estate by reason of the grant or assignment of the whole term. Sexton v. Chicago Storage Co. 129 Ill. 318 (21 N. E. Rep. 920), and cases. This distinction seems to be lost sight of in some of the cases. In others it is held that the introduction of a surrender clause determines the character of the instrument, and implies a reservation. But no such effect can be given to a covenant which only becomes operative, as in this case, after the expiration of the term. Stewart v. Long Island R. Co., supra; Blumenberg v. Myres, 32 Cal. 93; Schilling v. Holmes, 23 Cal. 227. So the right of re-entry is not an estate or interest in land, nor does it imply a reservation of a reversion. It is a mere chose in action. When enforced the grantor is in through the breach of the condition, and not by the reverter."

In Ohio Iron Co. v. Auburn Iron Co. 64 Minn. 404, 67 N. W. 221, Humphreys, the original lessee, relet for the full term of 99 years; the second lessee sublet for a term of 30 years. The plaintiff held

under assignments from both the second lessee and the sublessee; the defendant under an assignment from Humphreys the original lessee. The defendant seems to have asserted a forfeiture for breach of the conditions in the sublease for 30 years. While probably not necessary to sustain the decision, the court [at page 407] said:

"Humphreys retained no estate or interest whatsoever in the lands demised, and not even the possibility of a reverter remained in him, for the right to re-enter cannot exist as an independent condition. It only exists as an incident to an estate or interest for the protection of which it is reserved."

Craig v. Summers, supra, is cited as authority for this proposition, but that case does not go to such an extent.

In Cameron Tobin Baking Co. v. Tobin, 104 Minn. 333, 334, 116 N. W. 838, the court stated that the question presented was this:

"Can a lessee, who has by means of an instrument in form a sublease, parted with his whole term as to a portion of the premises leased by him, maintain an action of forcible entry and unlawful detainer against the person with whom he has so contracted, by virtue of an attempted reservation of the right of re-entry for the breach of a covenant contained in that instrument?"

The court quoted from Craig v. Summers, and said that that case did not determine the controversy for either party, but was authority for the proposition that the sublease was in fact an assignment of the plaintiff's interest in the premises leased by it. The court then [at page 335] said that it was not necessary to determine the effect of the Craig case, for, in Ohio Iron Co. v. Auburn Iron Co. supra,

"It was further held that 'the right of re-entry cannot exist as an independent condition, but only as an incident to an estate or interest for the protection of which it is reserved."

Basing the decision on this proposition, it was held that, as plaintiff had transferred his whole term, he could not maintain an action for possession for breach of the conditions contained in the instru-

ment by which he made the transfer. Defendant relies upon this case and we must concede that it sustains defendant's contention. It was criticized in Minn. L. Rev. Vol. 3, p. 334, Vol. 8, p. 195, note, and we are convinced that the proposition that "the right of re-entry cannot exist as an independent condition, but only as an incident to an estate or interest for the protection of which it is reserved," upon which the decision was based, and which was stated perhaps inadvertently, in the Ohio Iron Company case, cannot be sustained. The contrary has been held by this court repeatedly as well as by the courts generally.

In Farnham v. Thompson, 34 Minn. 330, 26 N. W. 9, 57 Am. Rep. 59, the court recognized that a conveyance in fee which left no reversion in the grantor could be terminated by re-entry for breach of a condition subsequent, but held that the deed there involved did not create such a condition.

In Sioux City & St. Paul R. Co. v. Singer, 49 Minn. 301, 51 N. W. 905, 15 L. R. A. 751, 32 Am. St. 554, the deed conveying the lots there in controversy contained a provision that it should be void if intoxicating liquors were sold on the premises. The court [at page 305] said:

"It is well settled that an owner of lands may annex such a condition as this to his conveyance, even of the fee, at least if he has any special and substantial interest in the enforcement of the condition,"

and held that the deed created a condition subsequent, and that the plaintiff could maintain an action of ejectment for breach of the condition.

In Hamel v. Minneapolis, St. P. & S. S. M. Ry. Co. 97 Minn. 334, 107 N. W. 139, the plaintiff conveyed by a deed which provided that if the land "shall not be used for station purposes for the period of one year at any one time," it shall revert to plaintiff. It was used for station purposes for several years and then defendant ceased to use it as a place for transacting business, although passengers were received and discharged there. Plaintiff recovered a judgment in the lower court for possession of the land, which was affirmed on appeal, this court [at page 337] saying:

"It is a condition subsequent, and operates upon failure of performance by the grantee as a forfeiture of the title conveyed, and though such conditions are not favored in law, and are construed strictly, they are upheld when unequivocally expressed and not impossible of performance."

In Minneapolis T. M. Co. v. Hanson, 101 Minn. 260, 112 N. W. 217, 118 Am. St. 623, one Newhouse conveyed 80 acres of land by a warranty deed containing a provision that the grantee should pay him $225 each year during his lifetime, and that the deed should be null and void on failure to make such payments. The grantee conveyed to the defendant by a deed containing a similar provision. Defendant mortgaged the land to plaintiff, and thereafter Newhouse re-entered for failure to make the stipulated payments. The court held that the deed created a valid condition subsequent and that the re-entry of Newhouse for breach thereof divested the lien of the plaintiff's mortgage. Doescher v. Spratt, 61 Minn. 326, 63 N. W. 736, was distinguished on the ground that the deed there involved contained no provision for re-entry. In addition to the above see Little Falls Water Power Co. v. Mahan, 69 Minn. 253, 72 N. W. 69; Johnson v. Paulson, 103 Minn. 158, 114 N. W. 739; Bruer v. Bruer, 109 Minn. 260, 123 N. W. 813, 28 L. R. A. (N. S.) 608; Furst v. Lacher, 149 Minn. 53, 182 N. W. 720.

Several courts have remarked that much of the seeming conflict in the cases arises from failing to distinguish between the rights and obligations resulting from the privity of estate which a sublease for the whole term creates between the original lessor and the sublessee and those resulting from the privity of contract which it creates between the sublessor and his lessee.

The courts which hold that a lessee cannot relet for his whole term and also reserve the right to re-enter for condition broken, place their ruling on the ground that he retains no reversionary interest in the property. It is a well settled general rule and is established by statute in this state (G. S. 1913, § 6808) that a tenant while in possession cannot deny his landlord's title. On this principle it is sometimes said that a sublessee cannot deny that his

immediate lessor possesses a sufficient interest in the property to support the relation of landlord and tenant between them. This is the doctrine of "reversion by estoppel" mentioned in the quotation from 18 Am· & Eng. Enc. supra, and in 1 Tiffany, Landl. & Ten., 915. It is also sometimes said—notably by the Massachusetts and Texas courts—that a right to re-enter for condition broken leaves a "contingent reversionary interest" in the sublessor which entitles him to re-enter as of his old estate on breach of the condition. But conceding that a sublease for the full term transfers all the estate of the sublessor leaving him with no reversionary interest in the property, we see no reason why a provision forfeiting the estate so transferred for breach of specified conditions should not be as valid and enforceable when found in such an instrument as when found in a deed conveying the fee. If such a provision may be attached to a grant or transfer of an estate in fee— and that it may is well settled—surely it may be attached to the grant or transfer of any lesser estate.

Where a sublease for the full term contains covenants to perform undertakings and conditions of substantial advantage to the sublessor, and, for the purpose of securing the performance of such covenants, the parties stipulate that in case of nonperformance the sublessor shall have the right to re-enter and repossess himself of the premises, we know of no reason why effect should not be given to their contract. It has been said that this would permit both the original lessor and the sublessor to enforce the same remedy against the sublessee for the same default. But the original lessor can re-enter only for breach of the conditions in the original lease, and, if he re-entered for breach of those conditions, it would oust both the original lessee and the sublessee, leaving no right or interest in the property in either. The original lessee is bound by contract to perform the covenants of the original lease, and has the right to prevent a forfeiture by performing them; and, if his lessee fails to perform the covenants of the sublease, he may repossess himself of the premises and enjoy the remainder of the original term.

The lease in controversy, in clear· and unmistakable language, gave plaintiff the right to re-enter and reclaim the premises for

failure to pay the stipulated rent or other breach of its conditions, and it is the duty of the court to give to the contract the effect plainly intended by the parties who made it, at least so far as this may be done and still accord to the original lessors the rights to which they are entitled. We are of opinion and hold that plaintiff had the right to re-enter for nonpayment of the stipulated rent.

We fail to see wherein the decree of the trial court infringes any rights defendant may have under the final proviso of chapter 428, p. 634, of the Laws of 1917.

The order appealed from is affirmed.