GRASS CREEK OIL & GAS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 75928. Promulgated July 31, 1935.

*L. A. Parker,* for the petitioner.
*Dean P. Kimball, Esq.,* for the respondent.

#### OPINION.

SEAWELL: This proceeding was instituted to redetermine a deficiency of $264.76 in income tax for 1931. The sole issue is whether income derived from the sale of oil and gas produced from land of the State of Wyoming is exempt from tax. The facts were stipulated.

In 1908 the State of Wyoming filed with the United States Government, pursuant to a right granted by Federal statutes, its selection of the N. ½ NE. ¼ of sec. 19, T. 46 N., R. 98 W. of the sixth principal meridian, hereinafter referred to as the tract, in lieu of a tract of like dimensions located in section 16. The tract thus relinquished was part of the lands granted to the State of Wyoming by the act for the admission of Wyoming, approved July 10, 1890, which granted sections 16 and 36 of every township for the support of the common schools.

In 1913 R. W. Harrison and others made a placer mining location covering the tract. On June 16, 1914, they leased the tract to B. H. Hopkins for a term of at least 25 years for the development of oil, gas, and other minerals from the land, reserving to themselves

a one-tenth royalty. Thereafter the lease was assigned by Hopkins to the Greybull Refining Co. On July 24, 1914, Harrison and the others conveyed to the petitioner, a Montana corporation, all of their claims, rights, and interest in the tract, including their rights under the lease to Hopkins. In 1915 the petitioner, as the successor to Harrison and the others, filed an application for a patent to the tract. At the same time the State of Wyoming was claiming title to the tract. The United States was also contesting the claim of the State of Wyoming to the lien selection on account of the oil discovery on the tract after the selection was filed.

On May 19, 1916, the petitioner and the Greybull Refining Co. amended the lease of June 16, 1914, to effect a reduction of the royalty on oil, gas, and other minerals produced from the land from 10 percent to 8 percent. The agreement also provided for a reduction of the royalty to 6 percent in the event of a determination that the State of Wyoming or any person or corporation other than the petitioner had title to the tract, and either the petitioner or the Greybull Refining Co., its successors and assigns, maintained leasehold rights from the State of Wyoming or any person or corporation other than the petitioner in or to the tract for the whole or any part of the term of the lease.

On May 24, 1916, the State of Wyoming leased the tract to the Greybull Refining Co. for a term of 5 years, subject to a royalty of 10 percent of all oil and gas produced from the land. At the same time the parties entered into a further agreement providing that:

. * * * in the event that the Grass Creek Oil and Gas Company, its successors and assigns, shall be adjudged the owner of said land, then the Greybull Refining Company guarantees for itself and for the Grass Creek Oil and Gas Co. and their successors and assigns, to pay to the State of Wyoming a royalty of ten percent (10%) upon all the crude production of oil and gas produced from the said land during the time the said premises are operated and production therefrom is marketed by said companies, their successors and assigns * * *.

On June 30, 1917, the Greybull Refining Co. assigned to the Midwest Refining Co. all of its interest in the lease of June 16, 1914, from Harrison and the others and the lease of May 24, 1916, from the State of Wyoming, together with the accompanying agreement. Under the assignments the assignee assumed the obligations set forth in the state lease and accompanying agreement and any renewals thereof.

Litigation prosecuted under the claim of the State of Wyoming for an unlimited patent to the tract resulted in a decision on March 28, 1921, in favor of the state. *State of Wyoming* v. *United States*,

255 U. S. 489. As a result of the decision the claim made by the petitioner in 1915 for a patent for the tract was rejected.

Thereafter, in 1921, 1923, and 1928, the State of Wyoming gave the Midwest Refining Co. leases for the production of minerals from the tract. The lease executed in 1928 was for a term of five years from March 2, 1928. In each of the leases the lessor reserved a royalty on all oil and gas produced from the tract.

In 1931 the petitioner received from the Midwest Refining Co., pursuant to provisions of the lease dated June 16, 1914, as amended May 19, 1916, the sum of $6,508.20 for oil and gas produced from the tract.

In *Fox Film Corporation* v. *Doyal*, 286 U. S. 123, the Court said:

The principle of the immunity from state taxation of instrumentalities of the Federal Government, and of the corresponding immunity of state instrumentalities from Federal taxation—essential to the maintenance of our dual system—has its inherent limitations. It is aimed at the protection of the operations of government (*McCulloch* v. *Maryland*, 4 Wheat. 316, 436), and the immunity does not extend "to anything lying outside or beyond governmental functions and their exertions." *Indian Motocycle Co.* v. *United States*, 283 U. S. 570, 576, 579. Where the immunity exists, it is absolute, resting upon an "entire absence of power" (*Johnson* v. *Maryland*, 254 U. S. 51, 55, 56), but it does not exist "where no direct burden is laid upon the governmental instrumentality, and there is only a remote, if any, influence upon the exercise of the functions of government." *Willcuts* v. *Bunn*, 282 U. S. 216, 225.

We fail to find anything in the stipulated facts in this proceeding from which to conclude that the payment of the income in question created a direct burden upon instrumentalities of the State of Wyoming.

At all times after June 30, 1917, including the taxable year, the Midwest Refining Co. was obligated by agreement to pay royalties on minerals produced from the tract to both the petitioner and the State of Wyoming. The obligation was assumed at a time when doubt existed as to the real owner of the tract and was the price the company had to pay to insure continuation of its right to develop the property, irrespective of whether the petitioner or the State of Wyoming was held to be the owner of the tract. None of the agreements between the State of Wyoming and the Midwest Refining Co. entered into after the Supreme Court rendered its decision concerning title to the land contained a provision for the payment of royalty to the state in the event the petitioner or any of its successors and assigns was adjudged the owner of the tract. Equity regarded the state as the owner of the selected tract at all times after the statute as to the lien selection had been complied with. *State of Wyoming* v. *United States, supra.*

None of the income in question was derived from a contract to which the State of Wyoming was a party. All of it was received under provisions of the lease of June 16, 1914, the lessor rights of which the petitioner acquired on July 24, 1914, as amended on May 19, 1916, by agreement between the petitioner and the Greybull Refining Co., assignor of the Midwest Refining Co.

The obligation to pay the royalty in controversy was thus one to which the State of Wyoming was not a party, directly or indirectly. The agreement was one which concerned only the petitioner and the Midwest Refining Co. and was not entered into in the exercise of any function of the State of Wyoming. The source of the income claimed to be exempt from tax on account of constitutional restrictions was not from operations under a lease with the state, but between the petitioner and the Midwest Refining Co., private corporations acting in their private capacity.

In *Wanless Iron Co.*, 29 B. T. A. 834; affd., 75 Fed. (2d) 779, Wanless, an individual, acquired a lease from the State of Minnesota, for the production of iron ore from state school land on a royalty basis of 25 cents per ton for all ore removed. The lessee assigned the lease to the Wanless Iron Co. and thereafter it subleased portions of the land to others. Each of the subleases made provision for payment of the royalty of 25 cents per ton directly to the State of Minnesota, as required by the lease issued to Wanless, and in addition thereto, a sum of money per ton to the Wanless Iron Co. The income received from the sublessees was held to be taxable, the court saying:

In the instant case, the source of the income sought to be taxed was not operations carried on under the state lease, but under a contract or lease between the petitioner, a private corporation, and certain other private individuals or corporations. These contracts were not assignments of the original lease (*Craig* v. *Summers* (Minn.) 49 N. W. 742), but were subleases, and as has been observed, contain terms differing from those of the original lease. They are distinct, separate contracts, to which the State of Minnesota is not a party, and the tax here is measured by the net income of the taxpayer arising from its operations in a private capacity for private gain. The sublessees agree to pay the petitioner royalties, and it thus obtained a profit from the sublessees' operation of the mines.

A like conclusion was reached by us in *Hobart Iron Co.*, 29 B. T. A. 855, based upon similar facts.

In *Atlas Life Insurance Co.*, 29 B. T. A. 750, the petitioner, assignee of a long-term lease on a lot of the board of education of Tulsa, Oklahoma, erected a home office building on the lot at its own expense and thereafter derived income from the rental of space in the building. The improvements were to remain the property of the lessee until the termination of the lease unless covenants of the lease were breached prior thereto. In agreeing with the Board that

the rental income was subject to tax, in a decision rendered June 17, 1935 (78 Fed. (2d) 166), the court said:

Here the rental is based upon the appraised value of the land and not upon the improvements; and the income claimed to be exempt is derived from the building, the property of the Insurance Company, and not from the land, the property of the Board of Education.

Here, as already pointed out, the income claimed to be immune from taxation was derived from property rights in a contract entered into between private corporations, operating in such capacity.

We do not think taxation of the income in controversy would place any direct burden upon the State of Wyoming. Accordingly, we hold that the income of $6,508.20 in question is subject to tax.

*Decision will be entered for the respondent.*